IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

AGWAY, INC. EMPLOYEES' 401(k) THRIFT
INVESTMENT PLAN, and STATE STREET
BANK & TRUST CO.,

              Plaintiffs,

                                 Civ. Action No.
                                 5:03-CV-1060 (HGM/GJD)

       vs.

NELS G. MAGNUSON, *et al.*,

              Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|

FOR PLAINTIFFS

| HANGLEY ARONCHICK LAW FIRM | PETER LEVAN, JR. , ESQ. |
|---|---|
| One Logan Square | |
| 27th Floor | |
| Philadelphia, PA 19103-6933 | |

| BLITMAN, KING LAW FIRM | JULES L. SMITH, ESQ. |
|---|---|
| 16 West Main Street | |
| Suite 207, The Powers Building | |
| Rochester, NY 14614 | |

FOR COMMITTEE DEFENDANTS

| SEYFARTH, SHAW LAW FIRM | MARK CASCIARI, ESQ, |
|---|---|
| 55 East Monroe Street | DEIDRE GROSSMAN, ESQ. |
| Suite 4200 | |
| Chicago, IL 60603 | |

FOR DIRECTOR DEFENDANTS

PROSKAUER, ROSE LAW FIRM          EDWARD CERASIA, II, ESQ.
One Newark Center
Newark, NJ 07102

FOR DEFENDANT BOSTON SAFE
DEPOSIT & TRUST CO.

O'MELVENY & MYERS, LLP             ROBERT N. ECCLES, ESQ.
1625 Eye Street NW                 GARY S. TELL, ESQ.
Washington, D.C.  20006-4001

SONNEBORN SPRING LAW OFFICE   JAMES L. SONNEBORN, ESQ.
241 W. Fayette St.
The Seneca Building
Syracuse, NY 13202

FOR DEFENDANT PWC

ORRICK, HERRINGTON LAW FIRM    JAMES J. CAPER, JR., ESQ.
666 FIFTH AVENUE
NEW YORK, NY 10103

HANCOCK & ESTABROOK, LLP         DANIEL B. BERMAN, ESQ.
1500 MONY TOWER I
SYRACUSE, NY 13202

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

This is an action brought by the plaintiffs pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et

seq.*, alleging significant breaches by various fiduciaries of their duties in

relation to a pension plan established by Agway, Inc. ("Agway"), a non-party, for the benefit of its employees.[1]  One of the defendants named in the action, Mellon Trust of New England, N.A., formerly known and sued herein as Boston Safe Deposit & Trust Company ("Mellon Trust"), has entered into a tentative settlement agreement with the plaintiffs.  As an integral part of that settlement, Mellon Trust seeks court approval of its terms and the corresponding entry of both a bar order which, *inter alia*, precludes assertion by the non-settling defendants of any indemnity or contribution claims against it arising out of the subject matter of the instant litigation, and a final, appealable partial judgment with regard to claims asserted against it in the action.  Mellon Trust's request for that relief is opposed by the two principal groups of defendants, the "Committee Defendants" and the "Director Defendants", in a jointly filed memorandum, and by defendant PriceWaterhouseCoopers LLP ("PWC"), on grounds

---

[1]     At the relevant times Agway, Inc. was a Delaware corporation with its principal place of business in DeWitt, New York, and operated as an agricultural cooperative primarily engaged in providing agricultural products and services to its members and other customers. *See* Amended Complaint (Dkt. No. 29) ¶ 8.  Agway and several of its wholly owned subsidiaries filed for bankruptcy protection under Chapter 11 of the former United States Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*, on October 1, 2002. *Id.*

3

which are similar, though not wholly co-extensive.[2]

Having reviewed the matter, which is before me on consent of the parties for the limited purpose of addressing Mellon Trust's application, I find that the bar order proposed by the settling parties is overbroad, since it purports to dispense with indemnity and contribution claims which the non-settling defendants could assert against Mellon Trust in the event of a suit brought by a plaintiff not a party to this action, and therefore reject the proposed settlement absent modification to address this concern.

I.   BACKGROUND

This action, which was commenced on August 26, 2003, was brought by plaintiffs Agway, Inc. Employees' 401(k) Thrift Investment Plan (the "Agway Plan"), an employee pension benefit plan as defined under ERISA, *see* 29 U.S.C. § 1002(2), and State Street Bank & Trust

---

[2]     The "Committee Defendants" category is actually comprised of two distinct groups, including various former members of Agway's Employee Benefit Plans Administration Committee, which was responsible for "carrying out all phases of the administration of the Plan, except those phases connected with the management of assets," *see* Amended Complaint (Dkt. No. 29) ¶ 9 & Exh. A, § 15.01, and former members of Agway's Employee Benefit Plans Investment Committee, a body responsible for "the management of the assets of the Plan[.]" *Id.* ¶ 10 & Exh. A § 15.02.  The "Director Defendants" were, at the time of filing, either former or, in some circumstances, then-current members of the Board of Directors of Agway. *Id.* ¶ 11. According to plaintiffs' complaint, the Director Defendants were responsible for appointing members of the Administration and Investment Committees and monitoring their performances, as well as for appointing and evaluating the performance of the plan trustee. *Id.* ¶ 11 & Exh. A  §§ 14.01, 15.01-15.02.

4

Company, a Boston, Massachusetts banking institution serving as an independent fiduciary for the Agway Plan.  In their complaint, plaintiffs principally assert breaches by various plan fiduciaries of their obligations under ERISA, to the detriment of the plan and its participants.  The ERISA violations alleged generally relate to the failure of plan fiduciaries to discern Agway's tenuous financial condition and the resulting overvaluation of Agway securities held in the Agway Plan's company security fund, as well as their failure to investigate as to whether the continued purchase of Agway securities was a reasonable and prudent investment option.

Plaintiffs allege that under the plan, Mellon Trust was required to render periodic statements to the Investment Committee regarding trust fund assets and their values and to appraise at "fair market value" any investment in the trust fund that was not publicly listed.  Plaintiffs maintain that by its reliance upon other sources to obtain that information and, consequently, reporting inaccurate valuations to the Investment Committee regarding the Agency securities, rather than independently evaluating those instruments, Mellon Trust breached its fiduciary obligation to the plan.

Plaintiffs' claims against PWC are based upon its position as an

independent auditor tasked with reviewing the Agway Plan's annual reports.  Plaintiff asserts that by rendering an opinion endorsing the methodology used to value the Agway securities as reasonable and proper, PWC violated ERISA, and additionally committed malpractice.

In lieu of answering plaintiffs' complaint, as amended, the various defendants have filed multiple motions attacking the sufficiency of plaintiffs' claims.  Those motions were argued on September 9, 2004, and remain pending before the court.

While maintaining its denial of liability as to any of the matters raised in plaintiffs' amended complaint, Mellon Trust has now entered into an agreement in settlement of plaintiffs' claims against that defendant.  That agreement requires Mellon Trust to pay $3.5 million to the Agway Plan, in return for the exchange of mutual releases.  Material to this settlement is the entry by the court of a bar order which would release Mellon Trust and preclude maintenance of claims by the non-settling defendants against it for indemnity or contribution arising out of the action and the events from which it stems.  In order to provide adequate protection to the non-settling defendants, the proposed bar order would require that any judgment subsequently obtained by the plaintiffs against any non-settling defendant would be reduced by the greater of the settlement payment of $3.5 million

or the amount attributable to the proportionate fault, if any, of Mellon

Trust.  Mellon Trust additionally seeks the entry of a final judgment,

pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to enhance

finality and insure the repose which it seeks through settlement.

## II.   PROCEDURAL HISTORY

_____The Mellon Trust settlement and that defendant's request for the

entry of a bar order and final judgment were presented to the court by way

of an order to show cause issued by Senior District Judge Howard G.

Munson on November 1, 2005, returnable on November 14, 2005.  Dkt.

No. 117.  In a memorandum jointly filed by the Committee Defendants and

Director Defendants, Dkt. No. 121, and in a separately filed submission on

behalf of PWC, Dkt. No. 120, those defendants have opposed the relief

now sought by Mellon Trust.  A hearing was conducted before me on

November 14, 2005 in connection with the Mellon Trust request for

approval of its settlement agreement and entry of the requested bar order

and final judgment, following which decision was reserved.[3]

---

[3]     When filed, this action was co-assigned to Senior District Judge Howard
G. Munson and Chief Magistrate Gustave J. DiBianco.  Upon the filing by Mellon Trust
of its application for the relief now sought, the Mellon Trust application was referred to
Chief Magistrate Judge DiBianco by Senior District Judge Munson in light of the latter's
trial schedule.  Chief Magistrate Judge DiBianco has since recused himself in the
matter, which as a result was then transferred to me for the purpose of hearing
argument regarding the pending motion.  While it was originally contemplated that I
would issue a report and recommendation to the assigned district judge regarding the

III.   <u>DISCUSSION</u>

A.   <u>Scope of Review</u>

Before passing on the propriety of the negotiated settlement between the plaintiffs and Mellon Trust, the court must first determine the requisite standard to be applied, and identify the relevant factors to be considered in making its determination.  Based upon the parties' submissions and arguments before the court, the relevant standard informing the court's analysis does not appear to be significantly controversial.

Resolution of litigated claims, particularly between parties who, as in the instant action, possess a significant degree of knowledge and sophistication with respect to the complex issues presented and are represented by capable counsel, is almost always preferable to the pursuit of litigation to conclusion.  In addition to avoiding the expense and uncertainties associated with litigation, and defining the rights and obligations of the parties on a mutually agreeable basis, settlement serves the additional purpose of relieving the courts from the burden which they would confront were every case filed processed through to trial, and on

_____

request, the parties have since consented to my consideration of the application pursuant to 28 U.S.C. § 636(c).

8

appeal.  As one court has aptly observed,

> [e]specially in these days of burgeoning federal
> litigation, the promotion of settlement is, as a
> practical matter, an absolute necessity. Otherwise,
> the already congested federal dockets would be
> bound in a hopeless gridlock.  Moreover,
> settlements, even partial settlements such as the
> one presently contemplated, serve valuable
> purposes other than judicial economy.  Plaintiffs
> who otherwise might have to wait for many years
> are assured some immediate compensation; the
> settling defendants are able to free themselves
> from litigation and pursue more productive matters;
> and the scarce societal resources which might be
> consumed by increasingly expensive litigation can
> be put to other redeeming uses.

*Nelson v. Bennett*, 662 F.Supp. 1324, 1334-35 (E.D. Cal. 1987) (citing

*Maher v. Zapata Corp.*, 714 F.2d 436, 466-67 (5th Cir.1983)).

Simply stated, the desirability of promoting settlement of litigated claims,

particularly when presented in the context of complex litigation such as

that now before the court, cannot be understated.  *See Gambale v.*

*Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) (citing *United States*

*v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856-57 (2d Cir. 1998)).

Promotion by the courts of the settlement process thus serves a vital

role in the administration of justice under our system.  As the Second

Circuit has noted,

> [t]here is no question that fostering settlement is an

9

important Article III function of the federal district
courts. . .. [A] principal function of a trial judge is to
foster an atmosphere of open discussion among
the parties' attorneys and representatives so that
litigation may be settled promptly and fairly so as to
avoid the uncertainly, expense and delay inherent
in a trial. . . . Where a case is complex and
expensive, and resolution of the case will benefit
the public, the public has a strong interest in
settlement.  The trial court must protect the public
interest, as well as the interests of the parties, by
encouraging the most fair and efficient resolution.
This includes giving the parties ample opportunity
to settle the case.

*Glens Falls Newspapers*, 160 F.3d at 856-57; *see In re Worldcom, Inc.
ERISA Litig.*, 339 F.Supp.2d 561, 567-68 (S.D.N.Y. 2004) (quoting *Glens
Falls Newspapers*).  Notwithstanding an overarching, pragmatic policy in
favor of fostering negotiated resolution of litigated disputes, however,
"settlements must not be achieved at the cost of fairness to all of the
parties[.]" *In re Del-Val Financial Corp. Secs. Litig.*, 868 F.Supp. 547, 560
(S.D.N.Y. 1994) (citations omitted).  It is against the backdrop of these
important considerations that the proposal now before the court must be
assayed.

In the ordinary case there is no requirement that a court review a
negotiated settlement between litigants for fairness.  *In re Master Mates &
Pilots Pension Plan and IRAP Litig.* ("*Masters Mates*"), 957 F.2d 1020,

10

1025 (2d Cir. 1992) ("Typically, settlement rests solely in discretion of the parties, and the judicial system plays no role.") (citations omitted).  In such an instance, the parties are generally left to their own designs, and their abilities to weigh the relevant factors including the potential for recovery or exposure, the expense of litigation, and other factors which inform the fairness of a settlement, and arrive at an independent judgment as to whether those factors militate in favor of the negotiated resolution, is presumed.

There are, however, circumstances under which court approval of a proposed settlement is required.  The most obvious example of such a situation is a class action suit, settlement of which must be approved by the court in light of its impact upon class members and dependency upon the adequacy of the representation provided by the named class representatives.  *See* Fed. R. Civ. P. 23(e); *see also Master Mates*, 957 F.2d at 1025.

Though this is not a class action suit, nor does it possess any other unique attribute which, by statute or rule, dictates that its resolution by the parties must be presented to the court for approval, because the settlement significantly alters the relationship of the parties and adversely affects the legal rights of defendants who are not parties to the settlement,

11

court approval is required.  *Master Mates*, 957 F.2d at 1026 ("[W]here the
rights of one who is not a party to a settlement are at stake, the fairness of
the settlement to the settling parties is not enough to earn the judicial
stamp of approval.").

In a class action suit, the court must consider the fairness of the
settlement from the perspective of the plaintiff class and its members.
*Master Mates*, 957 F.2d at 1025-26 ("In a class action settlement, the
normal focus is on the fairness, reasonableness and adequacy of the
settlement to the plaintiff class") (citations omitted).  In this case, however,
the court's primary focus is upon the effect of the settlement on the non-
settling defendants.  Court endorsement of a settlement is a matter
entrusted to the court's discretion, and should be given only if "'the
compromise is fair, reasonable and adequate.'"  *Masters Mates*, 975 F.2d
at 1026 (citing and quoting *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d
Cir. 1982), *cert. denied*, 464 U.S. 818, 104 S. Ct. 77 (1983)).  Since the
potential settlement is dependent upon the entry of a bar of contribution
and indemnity claims, the settlement should not be approved absent a
judicial determination that the settlement has been entered into in good
faith, and that no one has been set apart for unfair treatment.  *Masters
Mates*, 957 F.2d at 1030-31.  In such a case, the court's role is limited to

12

determining whether the bar order is "narrowly tailored."[4]  *Masters Mates*,

957 F.2d at 1031.

B.     Fairness of the Proposed Settlement in this Case

The centerpiece of the Mellon Trust settlement is the bar order

which it requests that the court enter in this action.  That bar order would

effectively preclude maintenance by the non-settling defendants of any

indemnity or contribution claims against Mellon Trust for matters arising

out of the circumstances giving rise to plaintiffs' claims.  In return, for the

protection of the non-settling defendants, any judgment ultimately

recovered by the plaintiffs against a non-settling defendant will be reduced

by the greater of $3.5 million or the amount subsequently attributed to the

proportionate fault of Mellon Trust.  The non-settling defendants object to

the bar order on a number of bases, arguing that it is overbroad,

potentially provides a windfall to the plaintiffs, and is dependent upon a

---

[4]      The Second Circuit has strongly suggested that an evidentiary hearing
should be conducted in order to determine the fairness of a proposed settlement,
taking into account the relevant factors including, *inter alia*, relative fault, the likelihood
of plaintiffs prevailing at trial, and the adequacy of resources of the potentially culpable
parties.  *See Masters Mates*, 975 F.2d at 1031-32.  The requirement of such an
evidentiary hearing in a case of this nature is less significant than in the case of a class
action suit, where factors such as the likelihood of plaintiffs prevailing at trial and the
adequacy of resources of the potentially culpable parties become more relevant than in
the present circumstances.  None of the non-settling, objecting defendants, who have
been heard both on paper and through oral argument, has requested such an
evidentiary hearing in this case.

court finding that there is a right of contribution or indemnity in a case such as this.[5]

Partial settlements which feature the entry of bar orders are neither unusual nor presumptively inappropriate. *See generally Worldcom*, 339 F. Supp.2d 561. Such orders barring the interposition of contribution and indemnity claims can not only provide powerful incentive for a party such as Mellon Trust to enter into a settlement, but indeed in most instances represent indispensable features of negotiated partial agreements.[6] "Contribution inhibits settlement, particularly in complex multiple defendant actions[.]" *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 550-51 (D. Colo. 1989) *(citing Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th

---

[5]     The non-settling defendants also object to the settlement on the basis that it would be easier to conduct discovery with regard to Mellon Trust should it remain in the litigation as a party. In support of this argument the non-settling defendants point out that if Mellon Trust is dismissed from the suit, the remaining parties will instead have to resort to the aid of Rule 45 of the Federal Rules of Civil Procedure in conducting discovery as to Mellon Trust, and additionally will be divested of the opportunity to serve it with interrogatories and requests for admissions. This result is a normal incident of any settlement which involves fewer than all of the parties in an action, however, and in my view the modest increase in the inconvenience of conducting discovery with regard to Mellon Trust does not provide a sufficient basis to reject a negotiated settlement of this nature.

[6]     Indemnity and contribution can be sought in an ERISA action, given the Second Circuit's observation that "[d]rawing on the principles of the law of trusts, [that court has] held that a system of proportional fault is to be developed as part of the federal common law of ERISA and have specifically incorporated rights to indemnity and contribution into that body of law." *Masters Mates*, 957 F.2d at 1027 (citing *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16-18 (2d Cir. 1991), *cert. denied*, 505 U.S. 1212, 112 S. Ct. 3014 (1992)).

Cir. 1981), *rev'd in part on other grounds*, 459 U.S. 375, 103 S. Ct. 683

(1983)).  Accordingly,

> [b]ecause of the importance of settlement to our litigation system, and because an unlimited right to seek contribution would "surely diminish the incentive to settle," courts may approve provisions in settlement agreements that bar contribution and indemnification claims between the settling defendants and non-settling defendants so long as there is a provision that gives the non-settling defendants an appropriate right of set-off from any judgment imposed against them.

*Worldcom*, 339 F. Supp.2d at 568 (quoting *Masters Mates*, 957 F.2d at

1028; other citations omitted).

A settlement bar should not be approved if it potentially provides a

non-settling defendant with a judgment reduction of less than the amount

paid by the settling defendants toward damages for which the non-settling

defendant could be jointly and severally liable.  *Masters Mates*, 957 F.2d

at 1031.  The entry of a bar order such as that now proposed is

appropriate, however, if under it the non-settling co-defendants stand to

realize a judgment reduction credit equal to or greater than the amount

paid by the settlement defendant.  *Id.*  This method, which is proposed in

this case, of determining the appropriate reduction in any judgment

realized against the non-settling defendants has sometimes been referred

to as the "capped proportionate share" approach, and potentially inures to the benefit of, but cannot be prejudicial toward, a non-settling co-defendant.  Under the proposed settlement, if at the end of the day Mellon Trust's proportionate share of liability and corresponding damages is found to be less than $3.5 million dollars, then the remaining, non-settling defendants will essentially realize a collective windfall reduction of their corresponding required contributions.  If, on the other hand, it is ultimately determined that Mellon Trust was responsible for damages in excess of $3.5 million, the bar order would require reduction of any judgment realized by the plaintiffs in an amount equivalent to that defendant's proportionate share of fault, in which case the non-settling defendants would bear only their rightful share of the load.  The Second Circuit has approved use of the capped proportionate share formula as not violating the circuit's "one satisfaction" rule.  *Gerber v. MTC Elec. Tech. Co., Ltd.*, 329 F.3d 297, 303 (2d Cir. 2003), *cert.denied sub nom.*, *Daiwa Secs. Am. Inc. v. Kayne*, 540 U.S. 966, 124 S. Ct. 432 (2003); *see also In re Worldcom*, 339 F. Supp.2d at 569.

The Committee Defendants and Director Defendants assert that without additional language to guard against this eventuality, implementation of this section could result in a windfall recovery for the

16

plaintiffs.  In support of that argument, they posit that by virtue of the operation of this provision the plaintiffs' recovery could actually exceed the total amount of damages suffered by them, particularly in the event of a finding that Mellon Trust bore little or no responsibility for the acts causing those damages.  To guard against this potential, those defendants have proposed inclusion of the following additional language in the bar order:

> In no event shall any Plaintiff be permitted to recover from the Non-Settling Defendants more than the total amount of Plaintiffs' losses as determined by this Court in the Action, less the money paid by Mellon Trust in settlement to the Plaintiffs.

Committee Defendants' & Director Defendants' Joint Memo in Opposition (Dkt. No. 121) at 3.  While the plaintiffs were willing to accede to this request, provided that the defendants would otherwise consent to the entry of the bar order, the non-settling defendants' continued opposition to the tentative settlement has resulted in plaintiffs' withdrawal of its willingness to agree to the proposed, added language.

Notwithstanding the non-settling defendants' argument to the contrary, implementation of the capped proportionate share rule cannot result in a windfall recovery by the plaintiffs, in violation of the one satisfaction rule.  Consider, for example, a plaintiff who has been injured

17

to the extent of $1,000, suing defendants A and B, who are potentially jointly and severally liable for plaintiff's injuries.  Assume further that defendant A settles with plaintiff for $100, and agrees that any judgment against non-settling defendant B should be reduced by the greater of the $100 settlement amount or an amount based on the settling defendant's proportionate fault.  In the event of an ultimate finding that both defendants are equally responsible for damages in the total amount of $1,000, B would be entitled to credit of $500 and plaintiff would therefore realize a total recovery of $600.  If, on the other hand, it was found that under the same circumstances that defendant A was only five percent liable with defendant B bearing the remaining ninety-five percent of responsibility for plaintiff's losses, defendant B would be entitled to a $100 credit, and would owe only $900.  Either way, the one satisfaction rule has not been violated, and plaintiff has recovered an amount which either equals or is less than its total damages.  Accordingly, I find no basis to require inclusion in the bar order of the requested language precluding plaintiffs from collecting more than the total amount of losses found applicable in the action.

Another issue raised by the non-settling defendants concerns the fact that the bar order's reduction provision is dependent upon a court

18

determination of the right of contribution or indemnity.  Toward that end,

PWC has proposed elimination of the preambulatory language to the final

paragraph of the bar order, providing that "[i]n the event the Court

concludes that there is a right of contribution or indemnity against a

Mellon Trust Releasee".  Eccles Aff. (Dkt. No. 117) Exh. A.  Since Mellon

Trust has consented to this proposed revision, I will eliminate that

language, finding merit to this argument raised by the non-settling

defendants.

The principal reason for the non-settling defendants' objection to the

entry of the bar order centers upon its language purporting to preclude the

non-settling defendants from seeking indemnity or contribution in

connection with any claims arising not only from or relating to this action,

but additionally "the events giving rise to the Action (or any other claim

against any Mellon Trust Releasee where the injury to the Non-Settling

Defendant is, relates to, or arises out of the Non-Settling Defendant's

liability to the Plaintiffs)", asserted in any forum.  Eccles Aff. (Dkt. No. 117)

Exh. A.  Contemplating the possibility of further actions, based upon the

circumstances giving rise to plaintiffs' claims in this suit, by the

Department of Labor – which appears to be actively monitoring this action,

*see*, *e.g.*, Dkt. Nos. 94, 100 – or one or more plan participants or

beneficiaries adversely affected by the conduct at issue in this action,  the non-settling defendants seek to limit applicability of the bar order to indemnity or contribution claims related to this action.

The possibility that the rights of the non-settling defendants to seek contribution or indemnity could be infringed in the event of the filing of such a suit by others, including individual plan participants in the Department of Labor, gives some room for pause.  On the one hand, the likelihood of prejudice inuring to the non-settling defendants from the proposed bar language in the event of a suit by a disgruntled plan participant is fairly remote.  It is doubtful whether such an individual plan participant asserting a claim of a breach of fiduciary duty, as distinct from a cause of action based upon the denial of benefits, for example, would be able to maintain such an action since the courts in this circuit have overwhelmingly held that a suit for breach of fiduciary duties "can be maintained only on behalf of the plan itself, not by an individual beneficiary on [his or] her own behalf." *Donnelly v. Bank of New York* Co., *Inc.*, 801 F.Supp. 1247, 1253-54 (S.D.N.Y. 1992). *Accord Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (holding that individual plan participants are barred under section 502(a)(2) of ERISA from seeking damages on their own behalf rather than on behalf of their plan); *McManus v. Gitano*

*Group, Inc.*, 851 F.Supp. 79, 82 n.4 (E.D.N.Y. 1994) ("because plaintiff

seeks benefits for himself, he does not seek any relief authorized for

breach of fiduciary duty under § 1132(a)(2)").  Moreover, even if a court

was willing to entertain a claim by an individual plan participant against the

defendants named in this action for breach of their fiduciary duty in the

face of a final determination in this action, it seems clear that the judicially

created doctrine of *res judicata* would preclude such an action.  "In order

to trigger the doctrine of res judicata, '[t]here must be both an identity of

parties and an identity of issues between the prior and subsequent suits.'"

*Meagher v. Board of Trustees of Pension Plan of Cement and Concrete*

*Workers District Council Pension Fund*, 921 F.Supp. 161, 164 (S.D.N.Y.

1995) (quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.

1977); alteration in original).  Plaintiffs have brought this action individually

and on behalf of all the participants in and beneficiaries of the Agway, Inc.

Employees' 401(k) Thrift Investment Plan.  *See* Complaint (Dkt. No. 1) ¶

1.  Under the doctrine of *res judicata*, a plan participant would be

precluded from bringing a subsequent action on his or her own behalf for

breach of fiduciary duties as the individual would qualify as a party in

privity with plaintiffs in this case, and the claims alleged would be identical.

21

The more prominent concern stems from the prospect of an action
brought by the Secretary of Labor, one which is far from unthinkable in
this instance.  Courts have consistently held that a subsequent action
brought by the Department of Labor pursuant to 29 U.S.C. § 1132 would
not be barred by the doctrine of *res judicata* based upon an earlier
judgment in favor of the plan and/or its participants in a case such as this,
since the national public interests represented by the Secretary of Labor
are separate and distinct from those of the private litigant in the earlier
action.  *See Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991), *cert.*
*denied sub nom.*, *Levy v. Martin*, 504 U.S. 909, 112 S. Ct. 1937 (1992);
*see also Herman v. South Carolina National Bank*, 140 F.3d 1413, 1424
(11th Cir. 1998) (noting that "[e]very Circuit addressing the issue has held
that the Secretary is not bound by prior private litigation when the
Secretary files an independent action to address ERISA violations.").
"The courts note that under ERISA's statutory framework, private plaintiffs
do not adequately represent, and are not charged with representing, the
broader national public interests represented by the Secretary."  *Herman*,
140 F.3d at 1424.  Endorsement of a private settlement attempting to bar
the Secretary's action in a particular case would effectively undermine the
ERISA enforcement scheme carefully constructed by Congress.  *Id.* at

22

1425-26.  As can be seen, it is therefore likely that commencement of a subsequent action by the Secretary of Labor would not be precluded by the private settlement or judgment entered in this case.

The eventuality which the non-settling defendants cite in support of their resistance to the proposed settlement and its expansive bar order is thus a legitimate concern.  It is entirely possible that the Secretary of Labor may choose to sue one or more of the fiduciaries associated with the Agway Plan even after this action is finally disposed of, asserting breaches of their fiduciary duties.  Among the potential defendants in such a case would be Mellon Trust, as well as the non-settling defendants.  In such an action the breaching fiduciaries would bear joint and several liability, *Masters Mates*, 957 F.2d at 1023 (citing 29 U.S.C. § 1105(a)(2)), and indemnity and contribution could be sought by one defendant from another potentially liable party.

Should the Secretary of Labor conclude that the total recovery realized in this action against the settling and non-settling defendants, either through compromise or at trial, was insufficient to compensate the Agway Plan and its participants for the fiduciary breaches at issue, it could maintain a separate action and recover the differential up to the total amount of those losses, without running afoul of the one satisfaction rule.

While nothing in the proposed settlement precludes the naming by the Secretary of Labor of Mellon Trust as a defendant in such an action, it would effectively preclude recovery by the non-settling defendants on claims of indemnity or contribution based upon Mellon Trust's share of responsibility.  Moreover, in such an action brought by the Secretary the non-settling defendants would not be entitled to the same set-off in such a case as was negotiated in connection with this action.

The court in *Masters Mates* specifically disapproved of a settlement bar, deemed to be excessively broad, which purported to enjoin the maintenance of any claim which could have been asserted against the settlement defendant rising out of or related to the matters at issue in this suit.  957 F.2d at 1032-33.  Observing that it could not predict all of the claims which might ensue from the pending litigation, the Second Circuit in that case noted that "although judgment reduction compensates a nonsettling defendant for his lost rights of indemnity and contribution, it does not necessarily compensate him for other lost claims."  *Id.* at 1033.  The court went on to find that such a provision was overbroad, and should have led to disapproval of the proposed settlement bar.  *See id.*

The situation at bar is somewhat analogous to that presented in *Gerber*.  There, the court voiced concern over a bar order which would

24

extinguish independent claims not related to the primary action noting, for example, that if one of the non-settling defendants in that case proved that it had sustained independent, representational damages or losses arising out of a breach committed by one of the settling defendants it would not have been compensated for those losses by the judgment credit, concluding that those claims therefore should not be extinguished by a bar order. *Gerber*, 329 F.3d at 306 (citing *TGB, Inc. v. Bendis*, 36 F.3d 916, 928 (10th Cir. 1994) ("Courts that have allowed bar orders have only barred claims in which the damages are 'measured by' the defendant's liability to the plaintiff. Besides contribution and indemnity claims, these include any claims in which the injury is the non-settling defendant's liability to the plaintiff. No court has authorized barring claims with independent damages" (citations omitted)).

For reasons similar to those articulated in *Gerber*, I find that the proposed bar order in this case overreaches, and consequently should not garner court approval. As the Second Circuit noted in *Gerber*, absent a court finding that no other potential ERISA claims exist – a finding which this court is not prepared to make – arising out the events at issue, "a modification to the bar orders is necessary to insure that the only claims that are extinguished are claims where the injury is the non-settling

25

defendants' liability to the plaintiffs." *Gerber*, 329 F.3d at 307 (emphasis

added; footnote omitted).  Because entry of the proffered bar order, as

drafted, was obviously a material term of the negotiated settlement, rather

than invoking the court's equitable powers to force Mellon to accept a

reduction in the scope of that bar order as part of the settlement, I instead

opt to offer it the choice to either agree to a modification of the language

to restrict its coverage to claims in this action, or to secure the Secretary

of Labor's agreement to accept the same judgment credit reduction in any

action it may ultimately bring on behalf of the Agway Plan participants for

breach of fiduciary duty as would apply in this action.  In the event that

neither option is pursued and realized, the court will withhold its approval

of the proposed settlement in a corresponding bar order.

     C.   Entry of Judgment

     The settling parties also seek the entry of a final, appealable

judgment implementing the terms of the settlement and corresponding bar

order.  That request is made pursuant to Rule 54(b) of the Federal Rules

of Civil Procedure, which provides, in relevant part, that

> [w]hen more than one claim for relief is presented
> in an action, whether as a claim, counterclaim,
> cross-claim, or third-party claim, or when multiple
> parties are involved, the court may direct the entry
> of a final judgment as to one or more but fewer

> than all of the claims or parties only upon an
> express determination that there is no just reason
> for delay and upon an express direction for the
> entry of judgment.

Fed. R. Civ. P. 54(b); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425

F.3d 158, 164-65 (2d Cir. 2005).  "Respect for the historic federal policy

against piecemeal appeals" necessitates that a Rule 54(b) certification not

be granted routinely.  *Grand River Enters.*, 425 F.3d at 165.  Instead,

"[t]he power should be used only in the infrequent harsh case where there

exists some danger of hardship or injustice through delay which would be

alleviated by immediate appeal."  *Id.*

In this instance the entry of the final judgment now sought by the

settling parties would serve the desirable purpose of allowing any

disgruntled non-settling defendant to challenge this court's approval of the

settlement and the entry of a bar order on appeal at an interlocutory stage

when the parties, including significantly Mellon Trust, would be able to

determine whether it was required to remain and participate in the

litigation.  Because no just reason for delay in the entry of such a partial

judgment has been offered by the non-settling, objecting defendants, I will

grant that requested relief.  *See Masters Mates,* 957 F.2d at 1025.

IV.    <u>SUMMARY AND ORDER</u>

The tentative, partial settlement achieved by the plaintiffs and Mellon Trust serves several important purposes, assuring repose and allowing avoidance of litigation expenses on the part of Mellon Trust, and realization of a substantial monetary recovery by the Agency Plan, to inure to the benefit of its participants.  Having reviewed the proposed settlement from the standpoint of its fairness to the non-settling defendants, I find that the elimination of Mellon Trust as a party, for discovery purposes, is not such an impediment as to render the proposed bar order unfair. Similarly, I find that objections on the part of the non-settling defendants regarding the issue of whether the court must find a right of contribution or indemnity in order for credit to be allowed against any judgment ultimately realized against the non-settling defendants can be remedied by elimination of that condition, to which the settling parties have agreed.

Additionally, I find that the method of calculating the appropriate judgment reduction credit to benefit the non-settling defendants is fully consonant with authority in this circuit, and specifically that it does not violate the one satisfaction rule.

The issue of extension of the bar order's preclusion to indemnity and contribution claims potentially growing out of actions brought by persons or parties other than the plaintiffs presents a more troublesome question.

Because the bar order purports to restrict contribution and indemnity in any case brought by another plaintiff not a party to this action, I reject the parties' settlement and decline to order entry of the bar order unless Mellon Trust either secures approval of the settlement by the Secretary of Labor and the agency's agreement that in any subsequent action brought by the Secretary of Labor, a judgment realized against the non-settling defendants in this action would be reduced by the greater of $3.5 million or the monetary equivalent of the proportionate fault of Mellon Trust, or unless Mellon Trust agrees to restriction of the bar order to indemnity or contribution claims related directly to this action.

Based upon the foregoing it is hereby

ORDERED that the application of Mellon Trust for approval of the tentative settlement reached with the plaintiffs is DENIED, without prejudice; and it is further

ORDERED, that in the event of fulfillment by Mellon Trust of the conditions noted above, the proposed settlement will be APPROVED and the bar order, as revised, will be issued by the court; and it is further

ORDERED, that in the event of the entry of the bar order the court clerk shall enter final, partial judgment dismissing plaintiffs' claims in the action against defendant Mellon Trust, pursuant to Rule 54(b) of the

Federal Rules of Civil Procedure, the court finding no just reason to delay

the entry of a separate final judgment with respect to the matters disposed

of in the court's bar order.


Dated:       November 21, 2005
             Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\Civil\2003\03-CV-1060\order.wpd

30