IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

AGWAY, INC. EMPLOYEES' 401(k) THRIFT
INVESTMENT PLAN, *et al.*,

                Plaintiffs,

                                   Civ. Action No.
                                   5:03-CV-1060 (HGM/DEP)

    vs.

NELS G. MAGNUSON, *et al.*,

                Defendants.

_____

APPEARANCES:                   OF COUNSEL:

<u>FOR PLAINTIFFS</u>

HANGLEY ARONCHICK LAW FIRM    JOHN S. SUMMERS, ESQ.
One Logan Square                   PETER LeVAN, JR. , ESQ.
27th Floor
Philadelphia, PA 19103-6933

BLITMAN, KING LAW FIRM        JULES L. SMITH, ESQ.
16 West Main Street
Suite 207, The Powers Building
Rochester, NY 14614

<u>FOR COMMITTEE DEFENDANTS</u>

SEYFARTH SHAW LAW FIRM        MARK CASCIARI, ESQ,
1270 Avenue of the Americas       KIMBERLY A. ALTSCHUL, ESQ.
Suite 2500
New York, NY 10020-1801

<u>FOR DIRECTOR DEFENDANTS</u>

PROSKAUER, ROSE LLP                    EDWARD CERASIA, II, ESQ.
One Newark Center, 18th Floor          MARY ELIZABETH DENO, ESQ.
Newark, NJ 07101

FOR DEFENDANT PWC

ORRICK, HERRINGTON LAW FIRM            JAMES J. CAPRA, JR., ESQ.
666 FIFTH AVENUE                       DIANA L. WEISS, ESQ.
NEW YORK, NY 10103                     MICHAEL J. LEGG, ESQ.

HANCOCK & ESTABROOK, LLP               DANIEL B. BERMAN, ESQ.
1500 MONY TOWER I
SYRACUSE, NY 13202

FOR AMICUS CURIAE
SECRETARY OF LABOR

U.S. DEPARTMENT OF LABOR               HOWARD M. RADZELY, ESQ.
Office of the Solicitor                Solicitor of Labor
Plan Benefits Security Division
P.O. Box 1914                          TIMOTHY D. HAUSER, ESQ.
Washington, D.C.  20013                Associate Solicitor
                                       Plan Benefits Security Division

                                       ELIZABETH HOPKINS, ESQ.
                                       Counsel for Appellate and
                                       Special Litigation
                                       Plans Benefits Security Division

                                       SUSAN J. LUKEN, ESQ.
                                       Trial Attorney

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

In October of 2002, Agway, Inc. ("Agway" or the "Company"), a large agricultural cooperative formed in 1964 and headquartered in the Syracuse, New York area, together with several of its wholly owned subsidiaries, filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*, leading ultimately to the Company's demise.  Among the casualties of that collapse were participants, comprised of present and former Company employees, in a defined contribution thrift savings plan which, it turns out, was heavily invested in Agway securities and debt instruments at prices established by the Company and, it is contended, known to be grossly overvalued, particularly in the years leading up to the bankruptcy filing.

The resulting losses suffered by plan participants led to the filing of this action by the plan and an independent plan fiduciary, interposing an assortment of federal and state law claims, including predominantly under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*  Named as defendants in the suit are various fiduciaries of the plan, falling into four distinct groups, as well as its independent auditors.  In response to plaintiffs' complaint the ERISA defendant groups remaining in the action, as well as the outside auditing

3

agency, have moved seeking dismissal of plaintiffs' complaint principally for failure to state a claim upon which relief may be granted.[1]

Applying the requisite, deferential Federal Rule of Civil Procedure 12(b)(6) standard, and informed by the modest, notice pleading requirements of Rule 8(a), I find that the ERISA defendant groups have not established beyond peradventure that plaintiffs will be unable to prove any set of facts entitling them to relief on at least some of their claims against them, and therefore recommend that their pending motions be denied, though with some refinement as to the scope of plaintiffs' causes of action asserted against certain of the defendant groups, and subject to dismissal of the ERISA claims brought by the plan in its own name.  I further find, however, that plaintiffs' complaint fails to state an ERISA claim against the plan's auditors, and therefore recommend dismissal of the federal claim asserted against that defendant and against the exercise of supplemental jurisdiction over plaintiffs' pendent, state law claims against that party.

I.    BACKGROUND[2]

---

[1]    As will be seen defendant Boston Safe Deposit & Trust Company, a trustee of certain Plan assets, has settled with the plaintiffs and been dismissed from the action.

[2]    I recognize that when answering, the defendants will undoubtedly deny many of the allegations set forth in plaintiffs' complaint, and some of them may well

Agway was formed as an agricultural cooperative in 1964, its primary purpose being to provide agricultural services and products to its farmer members and customers.  Amended Complaint (Dkt. No.  29) ¶¶ 8, 17.  Headquartered in DeWitt, New York, the cooperative employed approximately 4,000 individuals at the time plaintiffs' amended complaint was filed in December of 2003.  *Id.* ¶¶ 8, 18.

In 1965 Agway established a savings plan (the "Plan") for the benefit of its employees, pursuant to section 401(k) of the Internal Revenue Code, 26 U.S.C. § 401(k).[3]  Amended Complaint (Dkt. No. 29) ¶¶ 6, 19-21.  Although established under a different name, the Plan is now known as the Agway Employees' 401(k) Thrift Investment Plan.  *Id.* ¶ 19 & Exh. A.  The Plan, which qualifies as an employee pension benefit plan as

_____

prove to be unfounded.  Nonetheless, in light of the procedural posture of the case, the following recitation is derived from plaintiffs' amended complaint, the allegations of which have been accepted as true for purposes of the pending motions, as well as documents attached to and incorporated by reference into that complaint.  *In re Enron Corp.*, 328 B.R. 58, 65 (Bkrtcy. S.D.N.Y. 2005); *Fitzgerald v. Field*, No. 97 Civ. 5564, 1998 WL 152575, at *2 (S.D.N.Y. Apr. 1, 1998).

[3]     Section 401(k) permits an employer to establish a pension savings plan into which employee participants may contribute amounts up to a certain percentage of what would be their total taxable income.  26 U.S.C. § 401(k); *see Flanagan Lieberman Hoffman & Swaim v. Transamerica Life & Annuity Co.*, 228 F. Supp.2d 830, 835 (S.D. Ohio 2002).  Deposits made by employee participants into such a plan are generally tax deferred, and consequently are not taxed until the time of their withdrawal.  Section 401(k) imposes certain restrictions upon the percentage of income which may be contributed by an employee, and those limits are subject to various standards and tests.  *Id.*

defined under section 3(2) of ERISA, permits a participating Agway

employee to defer a portion of his or her compensation and to elect

instead to have that amount contributed into the Plan on the employee's

behalf. *Id.* ¶¶ 20-21.  Among the avowed purposes of the Plan was a

desire

> to stimulate personal savings on the part of the
> employees by furnishing them with an incentive
> through contributions by the Company matching a
> portion of their savings, to give employees an
> opportunity to acquire securities of the Company
> and become more interested in Company affairs,
> to provide additional funds at retirement to
> supplement the benefits provided under any Agway
> retirement plan and to provide an additional source
> of funds prior to retirement in the event of need.

Amended Complaint (Dkt. No. 29) Exh. A (hereinafter cited as "Plan § ___")

at Introduction.

Under the Plan, as it existed at the time of filing, participating

employees were given the option of electing to defer, on either a pre-tax

or after-tax basis, up to six percent of their annual compensation for

contribution into the Plan on their behalves; this component of the Plan

contributions is sometimes referred to as the "regular contribution".

Amended Complaint (Dkt. No. 29) ¶ 23; Plan § 3.01.  Subject to certain

specified restrictions, the Plan also permitted participants to elect to

6

contribute, similarly on either a pre-tax or after-tax basis, up to an

additional nine percent of their annual compensation, designated as an

"additional contribution".  Amended Complaint (Dkt. No.  29) ¶ 23; Plan §§

3.02, 3.03.

Among the salient Plan terms are provisions requiring Agway to

make contributions into the Plan on behalf of its employees.  The Plan

calls for Agway to make a guaranteed, matching contribution of ten

percent of each participant's regular contribution to the Plan.  *See*

Amended Complaint (Dkt. No. 29) ¶ 24; Plan § 4.01.  Additionally, in its

discretion, under the Plan's terms Agway may also make an annual bonus

contribution of up to an additional forty percent of a participant's regular

contribution to the Plan.  *Id.*  The Plan authorizes Agway to satisfy its

guaranteed and bonus contributory obligations, "at its option[,]" in the form

of "treasury stock or authorized and unissued shares of cumulative

preferred stock of the Company at the aggregate Current Market Value of

the stock so delivered on the date of delivery" or, alternatively, effective as

of June 12, 2002, "in cash."  Plan § 4.02.

While prior to July 1, 2000, the options available to participants were

more limited, as of that date participating employees were permitted by

the Plan to allocate their personal contributions to one or more of eight

7

specified investment vehicles, including a) a Company Security Fund ("CSF"), comprised solely of securities of Agway or its subsidiaries; b) a Stock Fund, which includes principally common or capital stocks and other similar investments in United States companies other than Agway and its affiliates; c) a Bond Fund, consisting primarily of various, specified types of fixed-income obligations; d) a Cash Fund, invested in short term obligations of the United States government, and other similar short term instruments; e) an Aggressive Growth Multi-Asset Fund, with an emphasis on equity investments; f) a Conservative Growth Multi-Asset Fund, consisting of equity interests and fixed income investments; g) an International Stock Fund, consisting primarily of common or capital stocks and other instruments issued by non-United States companies; and h) a United States Small Cap Stock Fund, comprised primarily of common or capital stocks and other similar instruments issued by small United States companies.[4]  Amended Complaint (Dkt. No. 29) ¶¶ 25-26; Plan §§ 7.01-7.08.  While participating employees retained the right to direct their contributions into one or more of these funds, the Plan terms required that all matching contributions made by Agway be deposited solely into the

---

[4]    The menu of investment options available to Plan participants was expanded in 2000 to include the latter four funds.  Amended Complaint (Dkt. No. 29) ¶¶ 25-26.

CSF, and additionally precluded participants from transferring those matching contributions from that fund into another of the investment vehicles available under the Plan.  Amended Complaint (Dkt. No. 29) ¶ 27.

Section 15 of the Plan governs its administration, and introduces parties serving in various fiduciary roles with regard to the Plan.  Under its terms, the Agway Board of Directors ("Board"), the Agway Employee Benefit Plans Administration Committee (the "Administration Committee") and the Company's Employee Benefit Plans Investment Committee ("Investment Committee") are charged with the responsibility of acting as fiduciaries of the Plan within the meaning of section 402(a) of ERISA. Amended Complaint (Dkt. No. 29) ¶¶ 32-34; Plan § 15.03.  Under the Plan, the Administration Committee is responsible, *inter alia*, for "carrying out all phases of administration of the Plan, except those phases connected with the management of assets[.]" *Id.* ¶ 32; Plan § 15.01.  The Plan also charges Agway's Investment Committee with the duty to manage Plan assets, investing in that body the authority and discretionary control over their acquisition, management, and disposition.  *Id.* ¶ 33; Plan § 15.06.  The Plan further designates the members of the Agway Board as responsible for appointing members the Administration Committee and the Investment Committee, to serve "at the pleasure of the Board[.]"

Amended Complaint (Dkt. No. 29) ¶¶ 11, 34; Plan §§ 15.01-15.02.

In August of 2002, the State Street Bank & Trust Company of Boston, Massachusetts ("State Street"), the Plan's co-plaintiff, was retained to act as an independent fiduciary with respect to the Plan's CSF. Amended Complaint (Dkt. No. 29) ¶ 7.  Under that plaintiff's retainer agreement, as later amended, State Street was authorized, among other things, to investigate the CSF and the financial condition and value of investments held by that Fund and determine what, if any, appropriate action should be taken with respect to potential claims on behalf of the Fund.[5]  Amended Complaint (Dkt. No. 29) ¶ 7.

In accordance with an amended and restated trust agreement dated August 1, 1994, and as further later amended on March 31, 1995, Boston Safe Deposit & Trust Company ("Boston Safe"), named as a defendant in plaintiffs' complaint and at the time a subsidiary of Mellon Financial Corporation, was engaged as a trustee of the Plan's assets and charged with various duties including to render statements, at least quarterly, of

---

[5]      In July of 2004 State Street was replaced by Fiduciary Counselors, Inc., as an independent fiduciary of the CSF, and that corporation accordingly was substituted as a named plaintiff in this action, in the place of State Street.  *See* Dkt. No. 104.

trust fund assets and values.[6]  Amended Complaint (Dkt. No. 29) ¶ 12.

The Plan also engaged PriceWaterhouseCoopers, LLC ("PWC"), a

Delaware limited liability partnership with a principal place of business in

New York City, to audit the annual financial statements of the Plan and

render opinions regarding their conformance to generally accepted

accounting principles ("GAAP").[7]  Amended Complaint (Dkt. No. 29) ¶¶

13, 118-23.

Throughout the relevant period, the Plan's Investment Committee

directed the purchase of Agway preferred stock and subordinated money

market certificates ("MMCs") as well as debentures issued by Agway or a

former, wholly owned subsidiary, Agway Financial Corporation

(collectively, "Agway Securities"), to be held in the Plan's CSF.  *Id.* ¶ 38.

Those purchases were made utilizing both personal contributions of Plan

participants, to the extent that they were directed into or allocated to the

CSF, and Agway guaranteed and bonus matching contributions, all of

which were invested solely in that Fund.  *Id.* ¶ 39.  By June of 2002, the

---

[6]      While Boston Safe is now known as Mellon Trust of New England, N.A.,
it will be referred to throughout this report as Boston Safe.

[7]      Plaintiffs' complaint does not specify the period over which PWC
performed this service.  An affidavit supplied by PWC, which has not been considered
by the court in view of the procedural posture of the case, suggests that the last Plan
financial statements audited by PWC covered the fiscal period ending June 30, 2001.
Musoff Aff. (Dkt. Nos. 49-55) Exh. 12 at F-2.

CSF had acquired and held Agway Securities with an assigned value of nearly $48 million; of that amount, $30 million is attributable to purchases made with personal contributions, with the remaining approximately $18 million representing purchases made through company contributions. *Id.* ¶ 41.

Purchases of the Agway Securities over the relevant period were made on terms unilaterally established by Agway; its stock, for example, was not publicly traded, and thus was acquired at a par value established solely by Agway. Amended Complaint (Dkt. No. 29) ¶¶ 42-43. Other instruments, including Agway MMCs, were similarly purchased for the CSF at face principal amounts and interest rates established by the Company. *Id.* At the relevant times prior to June 14, 2002, Agway maintained a voluntary redemption practice of repurchasing most forms of the Agway Securities held in the CSF at face amounts plus accrued interest or declared dividends. *Id.* ¶ 47(c). Beginning in 2000, however, the Company advised that not all of its securities were subject to the voluntary redemption practice, and that the program was strictly voluntary and could be terminated or suspended at any time. *Id.*; *see also* Amended Complaint (Dkt. No. 29) ¶¶ 61-63.

In their complaint plaintiffs allege that the fair market values of the

Agway Securities held in the CSF were substantially less than those affixed by the Company, based upon a variety of factors specified in their complaint, and that the Investment Committee and Boston Safe, which actually made the purchases, failed to adequately investigate and determine the worth of those instruments. *Id.* ¶¶ 44, 47.  Plaintiffs further allege that by receiving compensation from the Plan for its securities at greatly inflated rates, the Company was actually able to realize a return of significant portions of its matching contributions, thereby reducing its proportionate share of contributions to the Plan on behalf of its participating employees and providing the Company with an additional source of operating funds. *Id.* ¶¶ 48-50.

During the period commencing in or about the late 1990s and continuing until the Company's filing for bankruptcy protection on October 1, 2002, Agway's financial condition began to deteriorate markedly. Amended Complaint (Dkt. No. 29) ¶¶ 90-94.  While prior to 1997 the Company had relied principally upon retained earnings as a primary source of working capital, over time it began to look increasingly to loans and the proceeds of the sale of its securities to the CSF to finance its ongoing operations. *Id.* ¶ 90.  In annual filings made by the Company with the Securities and Exchange Commission ("SEC"), Agway reported net

13

losses during the years 2000, 2001 and 2002, extending to $98 million in the last of those years, in contrast to the $41 million in net earnings reported in fiscal year 1998. *Id.* ¶ 91. The increasingly precipitous financial condition experienced by Agway necessitated extraordinary measures, including regular negotiations with lenders for additional loans and waivers of debt covenant violations, leading to more drastic action when, in 2000, Agway began selling off its assets to meet its debt service and working capital requirements. *Id.* ¶¶ 91-94.

Notwithstanding these circumstances, of which the Board, Investment Committee and Administration Committee were well aware, the Plan continued to purchase and hold Agway Securities and Company debt instruments at their face amounts. Amended Complaint (Dkt. No. 29) ¶¶ 95-99. Moreover, the practice of investing Company matching contributions in the CSF continued up until the fund was frozen, effective on June 14, 2002, notwithstanding an announcement on March 6, 2002 by Agway of suspension of the sale of all Agway securities until a quarterly report could be filed with the SEC for the period ending March 31, 2002.[8]

---

[8] The report for the first quarter of 2002 was ultimately filed with the SEC on May 15, 2002, disclosing an additional net loss of nearly $17 million for the first three months of that year. Amended Complaint (Dkt. No. 29) ¶ 104. Agway did not, as had been anticipated, resume the sale of its securities upon the filing of that report, but instead simply proclaimed that resumption of the offering of such securities was

14

Amended Complaint (Dkt. No. 29) ¶¶ 101-02.

On June 17, 2002 Agway announced that effective three days earlier, it had suspended all activity in the Plan's CSF, and additionally was halting its voluntary redemption practice "until further notice." Amended Complaint (Dkt. No. 29) ¶¶ 108-09.  Since implementation of that freeze, Plan participants have been unable to withdraw, transfer, or take any action with respect to their respective interests in the Plan's CSF. *Id.* ¶ 110.  As of May 31, 2002, the holdings of the CSF, including accrued interest in cash, were reported to be slightly in excess of $50 million.  *Id.* ¶ 111.  That publicly communicated figure, however, was based upon the face value of the company securities held by the fund.  In the Plan's 2002 Annual Report, completed primarily as a result of the efforts of State Street – which by then had been appointed as an independent fiduciary of the CSF portion of the Plan – it was acknowledged that the face values did not represent an accurate measure of the fair market value of the instruments held in the fund.  *Id.* ¶¶ 113-15.  Plaintiffs allege that indeed, the assets held by the CSF are worth considerably less than the reported values, and that as such the Plan and its participants have realized significant losses.  *Id.* ¶ 116.

anticipated at some future date.  *Id.* ¶ 105.

15

II.    PROCEDURAL HISTORY

Plaintiffs commenced this action on August 26, 2003.  Dkt. No. 1.

Named as defendants in their complaint are the members of the

Administration Committee and the Investment Committee (collectively

referred to by the plaintiffs as the "Committee Defendants"); the members

of the Agway Board of Directors (the "Director Defendants"); Boston Safe,

a trustee designated to hold and manage the assets of the CSF;[9] and

PWC, an independent auditor tasked with reviewing the Agway Plan's

annual financial reports.  Dkt. No. 1.

An amended complaint, the operative pleading now before the court,

was subsequently filed by the plaintiffs on December 29, 2003.  Dkt. No.

29.  Plaintiff's amended complaint asserts claims under ERISA against the

various defendants for violating their fiduciary duties and engaging in

prohibited transactions.  Those ERISA violations alleged generally relate

to the failure of Plan fiduciaries to discern Agway's tenuous financial

condition and the resulting overvaluation of Agway Securities held in the

Plan's CSF, their failure to investigate as to whether the continued

_____

[9]    Plaintiffs' claims against Boston Safe have been settled, resulting in the issuance of a bar order precluding the assertion by its co-defendants of certain claims for indemnity or contribution arising out of the circumstances giving rise to this action, and entry of partial judgment dismissing plaintiff's claims as against that defendant. Dkt. Nos. 127, 128.

purchase of Agway Securities was a reasonable and prudent investment option, and the alleged dissemination of false and misleading information to the Plan participants regarding the financial condition of the Company and value of its securities.  Plaintiffs' complaint also sets forth pendent state law claims sounding in breach of contract, malpractice and negligent misrepresentation against defendant PWC.  *Id.*

In lieu of answering plaintiffs' complaint, as amended, the various defendants have filed multiple motions attacking the legal sufficiency of plaintiffs' claims.[10]  *See* Dkt. Nos. 42-46 (Director Defendants); 47, 49, 51-55 (PWC); and 48, 50 (Committee Defendants).  Those motions, which are now fully briefed, have been referred to me by Senior District Judge Howard G. Munson for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).[11]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Rule 12(b)(6) Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

---

[10]    Defendant Boston Safe filed a similar motion on February 22, 2004.  Dkt. Nos. 40-41.  That motion, however, has been terminated as moot in light of the entry of judgment dismissing that defendant from the suit by reason of settlement.  *See* Dkt. No. 128.

[11]    The Secretary of Labor has requested and been permitted to appear as *amicus curiae* and present her views regarding the issues implicated by defendants' motion.  *See* Dkt. No. 99.

of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, applying a standard which is neither controversial nor rigorous in its requirements.  Under that provision, a court may not dismiss a complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief."  *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citing, *inter alia*, *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).  In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp.2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).  Materials attached to and incorporated by reference into a complaint may also be considered when evaluating a party's claims in the face of a Rule 12(b)(6) motion.[12]

---

[12]      Various of the defendants have cited and relied in their motion papers upon the Agway Plan's summary plan description ("SPD").  While the Plan itself is attached to and incorporated by reference into the plaintiffs' amended complaint, the SPD is not.  In light of the nature of the SPD and its potential legal significance to plaintiffs' claims, its contents nonetheless may properly be considered in ruling upon a 12(b)(6) dismissal motion.  *Degrooth v. General Dynamics Corp.*, 837 F. Supp. 485, 487 (D. Conn. 1993) (citing, *inter alia*, *Cortec Industries, Inc. v. Sun Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S. Ct. 1561 (1992)).

B.      Governing Pleading Requirements

1.      Rule 8(a)

Rule 8 of the Federal Rules of Civil Procedure, which sets forth the

general pleading requirements applicable to most complaints filed in the

federal courts, requires that such a pleading include "a short and plain

statement of the claim showing that the pleader is entitled to relief[.]"  Fed.

R. Civ. P. 8(a); *see In re WorldCom, Inc.*, 263 F. Supp.2d 745, 756

(S.D.N.Y. 2003).  The court's determination as to the sufficiency of a

complaint must take into consideration the fact that the governing pleading

rules ordinarily require only that a defendant be afforded "fair notice of

what the plaintiff's claim is and the grounds upon which it rests."  *Conley*,

355 U.S. at 47, 78 S. Ct. at 103; *see Phillips v. Girdich*, 408 F.3d 124,

127-29 (2d Cir. 2005); *In re Ferro Corp. ERISA Litig.*, 422 F.Supp.2d 850,

857 (N.D. Ohio 2006).  This standard, though unexacting, nonetheless

requires that a complaint contain "more than the bare assertion of legal

conclusions."  *In re Cardinal Health, Inc. ERISA Litig.*, 424 F.Supp.2d

1002, 1015 (S.D. Ohio 2006) (citing *Allard v. Weitzman*, 991 F.2d 1236,

1240 (6th Cir. 1993)); *see also In re Polaroid ERISA Litig.*, 362 F. Supp.2d

461, 470 (S.D.N.Y. 2005).

In the end, Rule 8 contemplates only notice pleading; under the

rule's mandates, a complaint must sufficiently apprise a defendant as to the nature of plaintiff's claims with sufficient clarity to allow that defendant to answer and prepare for trial. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). To the extent that greater detail is required in order to effectively defend against such claims, "it is the role of the litigation tools of discovery and summary judgment to weed out unmeritorious suits." *In re Natural Gas Commodity Litig.*, 337 F. Supp.2d 498, 506 (S.D.N.Y. 2004) (citation omitted).

### 2.    Rule 9(b)

Certain of the defendants now claim that because of the nature of the allegations set forth by the plaintiffs in their complaint, their claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.[13] That rule, however, does not apply to the ordinary breach of fiduciary duty claim brought under ERISA and elevate the requirements for articulating such a claim beyond the minimal, notice pleading requirements of Rule 8(a). *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S. Ct. 992, 998 (2002); *In re Cardinal Health,*

---

[13]    Under that rule, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

*Inc. ERISA Litig.*, 424 F.Supp.2d at 1015-16; *Woods v. Southern Co.*, 396 F. Supp.2d 1351, 1359-60 (N.D. Ga. 2005).  As one court has noted, the mere couching of a breach of a fiduciary duty claim in an "incendiary tone" with assertions that the breaches were knowing and intentional, and even tantamount to fraud, does not bring the claim within the ambit of the elevated pleading requirements imposed under Rule 9(b).  *In re Polaroid ERISA Litig.*, 362 F. Supp.2d at 469-70; *but see Vivien v. WorldCom, Inc.*, No. C 02-01329, 2002 WL 31640557, at *5-*7 (N.D. Cal. July 26, 2002) (applying Rule 9(b) to ERISA claim based upon allegations of false and misleading representations regarding the financial performance of WorldCom).  Since the primary thrust of plaintiffs' ERISA claims entails alleged breaches by the defendants of their fiduciary duties and their having engaged in prohibited transactions, I recommend against applying the heightened pleading requirements of Rule 9(b).

     C.    <u>ERISA Overview</u>

The claims implicated by defendants' dismissal motions arise principally under ERISA.  Before turning to the merits of those motions, it is worth noting the contours of that broad remedial provision and appreciating its underpinnings.

In 1974, after years of study of the nation's private pension plan

regime and full ventilation of the arguments in favor of invoking federal protection of employee retirement and other benefits, Congress enacted ERISA, which has been described as a "'comprehensive and reticulated statute,'" designed to protect employee pension and retirement plans.  *In re Cardinal Health, Inc. ERISA Litig.*, 424 F.Supp.2d at 1016 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, 113 S. Ct. 2063, 2066 (1993)); *see also State Street Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 136 (2d Cir. 2003).  It has been said that "[t]hrough ERISA, Congress wanted to ensure that if an employee was promised a benefit, he would receive it."  *In re Cardinal Health, Inc. ERISA Litig.*, 424 F.Supp.2d at 1016 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 116 S. Ct. 1783, 1788 (1996)); *Parise v. Riccelli Haulers, Inc.*, 672 F. Supp. 72, 74 (N.D.N.Y. 1987) (Munson, C.J.); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).  ERISA accomplishes this manifest objective through a variety of means, including by providing insurance for certain vested pension rights, setting forth detailed requirements for plans and related plan documents, and establishing guidelines for establishment and management of the assets of both pension and non-pension benefit plans.  *Varity Corp. v. Howe*, 516 U.S. 489, 496, 116 S. Ct. 1065, 1070 (1996).  As remedial legislation, ERISA is subject to liberal construction in order to

protect participants in employee benefit plans.  *Parise*, 672 F. Supp. at 74 (citing, *inter alia*, *Smith v. OMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984)).

One of the ways in which ERISA accomplishes its goals is by requiring plans to name fiduciaries and addressing in some detail the duties owed to plans and their beneficiaries and participants by any person or party designated as or assuming the role of a fiduciary.  *Varity*, 516 U.S. at 496, 116 S. Ct. at 1070; *State Street Bank & Trust Co.*, 326 F.3d at 136 (citing *Varity*); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F.Supp.2d at 1016.  Section 404 of ERISA, which prescribes the duties owed by plan fiduciaries, requires that an ERISA fiduciary "shall discharge his duties . . . solely in the interest of the participants and beneficiaries", and all fiduciary obligations must be carried out "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]"[14]  29 U.S.C. § 1104(a)(1)(B); *see Varity Corp.*, 516 U.S. at 496,

---

[14]     Under section 404(a)(1),

[a] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

116 U.S. at 496, 116 S. Ct. at 1070; *Wilkins v. Mason Tenders Dist.*

*Council Pension Fund*, 445 F.3d 572, 579 (2d Cir. 2006).

The fiduciary duties set out in ERISA derive in large part from the

common law of trusts, which is often looked to for guidance regarding the

boundaries of fiduciary responsibility under ERISA, although it should be

---

> (A) for the exclusive purpose of:
>
> > (i) providing benefits to participants and their beneficiaries; and
> >
> > (ii) defraying reasonable expenses of administering the Plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C)  by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA].

29 U.S.C. 1104(a)(1).

noted that "ERISA's standards and procedural protections partly reflect a congressional determination that the common law of trusts did not offer completely satisfactorily protection." *Varity Corp.*, 516 U.S. at 497, 116 S. Ct. at 1070 (citations omitted).  Generally speaking, section 404(a) requires that a plan fiduciary act with an "eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S. Ct. 488 (1982); *In re WorldCom, Inc.*, 263 F. Supp.2d at 758 (citing *Bierwirth*).  Whether a fiduciary has acted with the requisite degree of prudence and diligence is measured objectively, taking into account the circumstances extant at the time, and without the advantages of hindsight.  *Chao v. Merino*, Docket No. 04-2125-cv, 2006 WL 1689216, at *7 (2d Cir. June 21, 2006).

The duties owed by a fiduciary to a plan's participants and beneficiaries fall generally into three broad categories, encompassing 1) a duty of loyalty, 2) the responsibility to act as a "prudent person", and 3) the charge to "act for the exclusive purpose" of providing benefits to plan beneficiaries.  *In re Cardinal Health, Inc. ERISA Litig.*, 424 F.Supp.2d at 1018 (citing *Kuper v. Iovenko*, 66 F.3d 1147, 1458 (6th Cir. 1995)); *see also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1093-94 (9th Cir. 2004); *In re Ferro Corp. ERISA Litig.*, 422 F. Supp.2d at 858 (citing

*Kuper*).  Those fiduciary obligations imposed by ERISA "have been

described as 'the highest known to the law.'" *Flanigan v. General Elec.*

*Co.*, 242 F.3d 78, 86 (2d Cir. 2001) (quoting *Bierwirth*); *see Chao v. Hall*

*Holding Co., Inc.*, 285 F.3d 415, 426 (6th Cir. 2002) (citing, *inter alia*,

*Bierwirth*), *cert. denied*, 537 U.S. 1168, 123 S. Ct. 966 (2003); *Herman v.*

*NationsBank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997) (citing

*Bierwirth*); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F.Supp.2d at 1017

(citing *Chao*); *see also Woods*, 396 F.Supp.2d at 1360 (citing *Herman* and

*Bierwirth*).

ERISA defines in some detail the term fiduciary, providing that

subject to an exception not applicable in this instance, under ERISA

> a person is a fiduciary with respect to a plan to the
> extent (i) he exercises any discretionary authority
> or discretionary control respecting management of
> such plan or exercises any authority or control
> respecting management over disposition of its
> assets, (ii) he renders investment advice for a fee
> or other compensation, direct or indirect, with
> respect to any moneys or other property of such
> plan, or has any authority or responsibility to do so,
> or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of
> such plan.

29 U.S.C. § 1002(21)(A).  Fiduciaries falling within this definition are

divided into two categories, including those who are named as fiduciaries,

26

and specifically referenced in plan documents as such, and others who, though not specifically identified as such, nonetheless under the plan documents are given discretionary authority or control over the management, administration, or assets of the plan.[15]  *Woods*, 396 F.Supp.2d at 1364 (citing *In re Polaroid ERISA Litig.*, 362 F. Supp.2d at 472).  The designation of a party not specifically named in a plan as a fiduciary is subject to the overarching consideration that under ERISA, the term fiduciary was intended by Congress to be broadly construed.  *See In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 826 (S.D. Ohio 2004) (citing *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988)); *see also Bouboulis v. Transport Workers Union of America*, 442 F.3d 55, 64-65 (2d Cir. 2006).

Under ERISA, the duties imposed upon a fiduciary are set forth in functional terms, and are dependent upon the person's ability to exercise discretionary authority or control regarding specific aspects of a plan's administration.  *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812-13 (2d Cir. 1987); *In re Polaroid ERISA Litig.*, 362 F.Supp.2d at 472; *see* 29

---

[15]    ERISA mandates that every employee benefit plan must be established and maintained pursuant to a written instrument that provides for one or more "'named fiduciaries'" who jointly or severally shall have authority to control and manage the operation and administration of the Plan.  *In re Cardinal Health, Inc. ERISA Litig.*, 424 F.Supp.2d at 1017 n. 13 (quoting 29 U.S.C. § 1102(a)(1)).

U.S.C. § 1002(21)(A); *see also Woods*, 396 F.Supp.2d at 1364.  A

fiduciary's obligations are therefore circumscribed by the extent to which

the party exercises discretionary authority or control regarding

management of the plan, or has been delegated such authority under its

terms.  See *Bouboulis*, 442 F.3d at 63 (citing *Varity Corp.*, 516 U.S. at

498, 116 S. Ct. at 1071).  The Act provides that "[a]n ERISA fiduciary may

be liable for breaching his fiduciary duties through conduct adversely

affecting the plan only to the extent that conduct occurs while the

individual is a fiduciary and falls within the scope of his fiduciary

authority."[16]  *In re Polaroid ERISA Litig.*, 362 F.Supp.2d at 471 (citing 29

U.S.C. § 1109 and *Pegram v. Herdrich*, 530 U.S. 211, 225-26, 120 S. Ct.

2143, 2152-53 (2000)).  As one court has noted,

> [t]rustees do not breach their fiduciary duties under
> ERISA simply by presiding over a plan which fails
> in some respect to conform to one of ERISA's
> myriad provisions.  Rather, a trustee breaches an
> ERISA fiduciary duty only where, when acting as a
> fiduciary within the meaning of ERISA § 3(21)(A)
> (29 U.S.C. § 1002(21)(A)), the trustee fails to
> discharge one or more of the duties described in
> 29 U.S.C. § 1104.

---

[16]     As will be seen, a fiduciary may also be liable for the known breach of a
co-fiduciary, even when the breach occurs in connection with a function which does
not fall within the fiduciary's designated or undertaken responsibilities.  29 U.S.C. §
1105; *see* pp. 53-55, *post*.

*Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 387 F. Supp.2d 175, 184 (E.D.N.Y. 2005) (citing *In re WorldCom, Inc.*, 263 F. Supp.2d at 757).

The determination of whether a party is a plan fiduciary is a "flexible and fact-intensive concept", and thus not particularly well-suited for disposition on a Rule 12(b)(6) motion. *Woods*, 396 F. Supp.2d at 1365. The term is generally accorded broad, liberal construction consistent with ERISA's underlying objectives. *Id.* at 1364 (citing *In Re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp.2d 511, 544 (S.D. Tex. 2003)).

Before turning to the specifics of plaintiffs' complaint and defendants' contentions in response to its allegations, I will preliminarily address one argument which has been raised by plaintiffs. In their opposition to defendants' motions plaintiffs attach great significance to the distinction between parties who are named in plan documents as fiduciaries, and those who serve in that role by virtue of their exercise of authority despite not specifically being named as such. Plaintiffs argue that fiduciaries named as such in plan documents are charged with fiduciary responsibilities extending to all discretionary functions associated with the particular plan at issue. *See*, *e.g.*, Plaintiff's Omnibus Memorandum (Dkt. No. 66) at 24-31; *see also* Amended Complaint (Dkt.

No. 29) ¶ 192 ("The Director Defendants had fiduciary responsibility for the overall administration of the Plan.").  This position appears to be unsupported by mainstream ERISA jurisprudence, and indeed the Department of Labor ("DOL"), which exercises an ERISA oversight function, has indicated that it does not subscribe to plaintiffs' theory that a fiduciary named in a plan is a fiduciary for all purposes, without regard to the designated function to be served.  *See* Amicus Curiae Brief (Dkt. No. 99) at 5; *see also* 29 C.F.R. § 2509.75-8 D-3 and FR-14 (when a plan allocates responsibilities among named fiduciaries, those fiduciaries are not liable for the acts and omissions of other named fiduciaries carrying out separate fiduciary responsibilities allocated to them except to the extent that they may be accountable under section 405(a) for breaches of their co-fiduciaries).  Having found no support for the proposition advanced by plaintiffs, I reject the notion that as named fiduciaries, for example, the Director Defendants were responsible as fiduciaries for all aspects of administration of the Plan, notwithstanding the narrow role carved out for them under its express terms, and instead will limit my focus on the responsibilities of each of the named fiduciaries pursuant to the authority and discretion granted under Plan documents, and exercised by them.

D.     Proper Party-Plaintiffs

As a threshold matter, the Committee Defendants have moved seeking dismissal of all claims brought against them by the Agway Plan as a named plaintiff.  Dkt. No. 50.  In their motion the Committee Defendants assert that under ERISA a plan, as distinct from its participants, beneficiaries, or fiduciaries, lacks standing to assert breach of fiduciary claims and to seek monetary and/or equitable relief for such a breach, and as such this court lacks subject matter jurisdiction over those claims brought by the Plan.

Defendants' challenge of the Plan's standing implicates the court's subject matter jurisdiction, and thus arises under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which provides that a court dismiss any claim over which it concludes that it lacks subject matter jurisdiction. *Bona v. Barasch*, No. 01 Civ. 2289, 2003 WL 1395932, at *9 (S.D.N.Y. Mar. 20, 2003).  Because subject matter jurisdiction is a fundamental prerequisite to the ability of a federal court to hear and decide a claim, in accordance with Article III of the Constitution, the defense may not be waived and indeed can be raised by the court *sua sponte* at any time during the course of litigation.  *See Andrus v. Charlestone Stone Prods. Co., Inc.*, 436 U.S. 604, 608 n.6, 985 S. Ct. 2002, 2005 n.6 (1978).

31

The breach of fiduciary claims asserted by plaintiffs against the Committee Defendants are brought under section 502(a)(2) and (3), embodying two of the six causes of action comprising the civil enforcement scheme established under ERISA. *See Wilkins*, 445 F.3d at 578. The first of those subsections empowers the Secretary of Labor, a plan participant, a plan beneficiary, or a plan fiduciary to sue for breach of a fiduciary duty under section 409 of the Act, while the second – sometimes characterized as a "catch-all" provision – permits "a participant, beneficiary, or fiduciary" to sue for equitable relief to enjoin an ERISA violation or to enforce a plan's terms. *Id.* (citing *Varity Corp.*, 516 U.S. at 512, 116 S. Ct. at 1077-78). While it is true that ERISA includes a section specifically authorizing a plan to sue and be sued in its name, *see* 29 U.S.C. § 1132(d)(1), courts have declined to import that provision into section 502(a)(2) and (3) and construe it as indicative of congressional intent to confer subject matter jurisdiction over claims brought by a plan itself for breach of a fidicuary duty. *See*, *e.g.*, *Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 891-93 (2d Cir.), *cert. denied*, 464 U.S. 845, 104 S. Ct. 148 (1983). Focusing on the limited universe of permissible plaintiffs specified under these subsections various courts, including the Second Circuit, have

overwhelmingly concluded that a plan, as distinct from its participants,

beneficiaries and fiduciaries, lacks standing under ERISA to sue claiming

breach of fiduciary duty, and that accordingly, a federal court lacks subject

matter jurisdiction over any such claim brought by a plan.  *Id.*; *see also*

*Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 981-

83 (9th Cir. 1999), *cert. denied sub nom*, *Pettit v. Bay Area Pipe Trades*

*Pension Trust Fund*, 528 U.S. 1156, 1205 S. Ct. 1163 (2000); *Kahler*

*Corp. v. John Hancock Mutual Life Ins. Co.*, CIV. No. 90. 4-88-1109, 1989

WL 119176, at *9 (D. Minn. Oct. 2, 1989) ("The overwhelming majority of

courts have concluded that a plan has no standing to sue pursuant to

ERISA and a court has no jurisdiction to hear such a claim.") (citations

omitted).

Because it appears clear that the Plan lacks standing to sue under

ERISA claiming breaches of fiduciary duties, this court lacks the authority

to address those claims.  Accordingly, I recommend dismissal of the

breach of fiduciary claims asserted by the Agway Plan in counts one, two,

three, five, and six of plaintiff's complaint.[17]  I recommend against

---

[17]     The dismissal of the Plan as a party plaintiff is, in the end, of little
moment since the claims asserted in the counts in dispute are also brought on behalf
of Fiduciary Counselors, Inc., which, as a fiduciary with regard to the Fund, does
possess standing to raise such a claim.  29 U.S.C. § 1132(a)(2) and (3); *see Flanagan
Lieberman Hoffman & Swaim v. Transamerica Life & Annuity Co.*, 228 F. Supp.2d 830,
840 (S.D. Ohio 2002) (Plan, which lacked standing, found to be "redundantly" named

dismissal of the Plan's claims against defendant PWC in counts seven, eight, and nine, however, since it is clear that a plan may sue and recover from a party for alleging breach of a duty owed to the plan under a provision of law, statutory or otherwise, which is independent of and not subject to pre-emption by virtue of the requirements of ERISA. *Framingham Union Hosp., Inc. v. Travelers Ins. Co.*, 721 F.Supp. 1478, 1487, 1489-90 (D. Mass. 1989); *see also Pressroom Unions-Printers League Income Sec. Fund*, 700 F.2d at 893 (Section 1132(d)(1) "authorizes suits to be brought by funds in other situations where there would properly be jurisdiction.  For example, if a fund became involved in a contract dispute, and wished to pursue a state law contract claim, [section] 1132(d)(1) would allow the fund to bring such an action in its own name") (footnote omitted).

E.    ERISA Breach of Fiduciary Claims Under Section 404

In their complaint, plaintiffs have alleged fiduciary duty breaches on the part of the various defendants other than PWC (hereinafter, the "ERISA Defendants"), in violation of section 404(a) of ERISA, as well as

_____

as a plaintiff along with a Plan fiduciary); *see also Bona*, 2003 WL 1395932, at *9.

their liability for breaches of co-fiduciaries under section 405(a).[18] The test

for assessing the sufficiency of breach of fiduciary claims under ERISA,

though oftentimes troublesome in its application, is not particularly

controversial. To state a claim for breach of fiduciary duty under ERISA, a

plaintiff must allege that 1) the defendant was a fiduciary of an ERISA plan

who, 2) acting within the scope of his or her capacity as a fiduciary, 3)

engaged in conduct constituting a breach of his or her fiduciary duty.

*Stein v. Smith,* 270 F.Supp.2d 157, 165-66 (D. Mass. 2003) (citing *Beddall*

*v. State Street Bank & Trust Co.*, 137 F.3d 12, 19 (1st Cir. 1998)).

When evaluating potential fiduciary liability under section 404, it is

important to note that standing alone the finding that a party is a fiduciary,

either as having been delegated discretionary authority over management

of a plan or by virtue of exercising such authority, does not establish the

contours of the duties affixed under ERISA in light of that status; fiduciary

status is not an all-or-nothing proposition, but is instead dependent upon

the extent to which the party possesses or exercises the requisite

discretion and control over management of the plan and its assets.  *Stein,*

---

[18]     According to the plaintiffs, the ERISA Defendants' liability is also predicated on section 406(a), a provision which restricts acquisition by a plan, with certain exceptions, of securities of a "party in interest."  *See* Amended Complaint (Dkt. No. 29) ¶¶ 239-43.  That claim will be addressed elsewhere in this report.  *See* pp.55-63, *post.*

270 F.Supp.2d at 165-66; *see also Hull v. Policy Management Sys. Corp.*,

No. CIV. A. 3:00-778-17, 2001 WL 1836286, at *4 (D.S.C. Feb. 9, 2001)

("An individual may . . . be a fiduciary in some of his or her actions but not

in regard to others."); *Independent Ass'n of Publishers' Employees, Inc. v.*

*Dow Jones & Co., Inc.*, 671 F. Supp. 1365, 1367 (S.D.N.Y. 1987) ("ERISA

recognizes that an employer may be a fiduciary with respect to some

elements of a plan, but not with respect to others.").  "To determine

fiduciary status, it is necessary to examine the particular activity in

question and to assess the individual's role with regard to it."  *In re*

*McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030, 2002 WL 31431588,

at *9 (N.D. Cal. Sept. 30, 2002) (citing *Maniace v. Commerce Bank*, 40

F.3d 263, 267 (8th Cir. 1994)).  Accordingly,

> [i]n order to have properly pleaded a breach by any
> defendant of a fiduciary duty, the plaintiffs must
> plead first that the defendant was a fiduciary with
> respect to [the Plan] and that he or she breached a
> duty to [the] Plan that related to matters within his
> or her discretion and control.

*Stein*, 270 F.Supp.2d at 166.  It is against this backdrop that the court

must evaluate the sufficiency of plaintiffs' allegations regarding the

fiduciary breaches on the part of the various ERISA Defendant

constituents.

36

1.    <u>Administrative Committee Defendants</u>

Count one of plaintiffs' amended complaint alleges breaches on the part of the Administration Committee Defendants of their fiduciary duties, in violation of section 404(a) of ERISA.  Amended Complaint (Dkt. No. 29) ¶¶ 149-66.  Pointing to the broad range of obligations imposed upon the members of that committee under the Plan, plaintiffs assert that they breached their fiduciary duties through their authorization and/or acquiescence in the Plan's acquisition of Agway Securities at prices in excess of their fair market values, thereby both endorsing an imprudent investment practice and failing to ensure meaningful satisfaction of the Company's matching contribution requirement under the Plan.  *Id.* ¶ 154.  Plaintiffs' complaint also alleges that affirmative misrepresentations were made by the Administration Committee Defendants to Plan participants regarding the fair market value of both the Plan as a whole and the CSF, including the Agway Securities held by that fund, *id.* ¶ 155, and their failure to convey relevant and material information regarding the true financial condition of the Plan to its participants, *id.* ¶ 156.

Before addressing the sufficiency of plaintiffs' allegations against this group of defendants, it is important to recognize the extent of the fiduciary functions allocated to the Administration Committee under the

Plan.  The Plan places "[t]he responsibility for carrying out all phases of the administration of the Plan, *except those phases connected with the management of assets*" with the Administration Committee.  Plan § 15.01(f) (emphasis added).  The Plan also vests discretionary authority for its interpretation, construction and application in the Administration Committee, to include, though not be limited to,

> (i) determining and deciding all questions of law and/or fact that arise under the Plan;
>
> (ii) determining whether any individual is eligible for benefits under this Plan; and
>
> (iii) determining the amount of benefits, if any, an individual is entitled to under this Plan.

*Id.* § 15.07.

The Plan thus assigns responsibility for its mechanics, including all determinations regarding entitlement to benefits, to the Administration Committee, but specifically carves out from that group's discretionary authority the management of assets, including investments.  Under the Plan's express terms, even assuming *arguendo* that Plan fiduciaries retained the discretion not to invest, including the assets contained within the CSF, in Agway Securities, that decision does not fall within the ambit of the Administration Committee Defendants' fiduciary duties.  Accordingly

count one, to the extent that it alleges a direct breach on the part of the

Administration Committee Defendants based upon their failure to guard

against the Plan's investment in overvalued Agway Securities, cannot

stand.[19]

Count one goes on, however, to allege that the Administration

Committee Defendants "made affirmative representations to [Plan]

Participants, and/or failed to correct the affirmative misrepresentations of

others of which they had actual or constructive knowledge, regarding"

various plan attributes including, notably, the value of the CSF and the

company securities held within that fund.  Amended Complaint (Dkt. No.

29) ¶ 155.  One of the ways in which plaintiffs allege the Plan's

participants were misled is in connection with the Company's voluntary

redemption practice.  In Plan filings issued prior to 2000 it was reported

that Agway Securities were held by the Plan at face value due to the

Company's voluntary redemption practice.  Amended Complaint (Dkt. No.

29) ¶¶ 60, 63.  Those filings failed to report, however, that the voluntary

redemption program did not apply to all of the securities held in the CSF,

---

[19]     Plaintiffs' amended complaint also alleges that the Administration
Committee Defendants "knowingly participated in, concealed, enabled, failed to
remedy, and/or aided and abetted one or more breaches committed by their co-
fiduciaries[.]" Amended Complaint (Dkt. No. 29) ¶ 163.  These allegations of their
liability under section 405 for breaches of their co-fiduciaries will be addressed further
on this report.  *See* pp. 53-55, *post*.

and additionally that Agway had reserved the right to halt its program at any time.  *Id.* ¶ 61.  Plaintiffs also allege that throughout the relevant period, filings and statements rendered were intended to encourage participants to invest their personal contributions into the Company Security Fund, and that those statements were materially misleading. *See, e.g.*, Amended Complaint (Dkt. No. 29) ¶ 73.

Subsumed within the broad range of duties imposed under ERISA upon plan fiduciaries is the obligation to refrain from providing materially misleading information to participants, and additionally to inform participants of the facts known to the fiduciary under circumstances where that party "knows that silence might be harmful."  *Bixler v. Cent. PA. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993); *Woods*, 396 F. Supp.2d at 1376-77; *In re Polaroid ERISA Litig.*, 362 F. Supp.2d at 478.  Precisely how far that duty extends, particularly in this circuit, is not necessarily well defined.  *In re Polaroid ERISA Litig.*, 362 F. Supp.2d at 478.  It is nonetheless clear that

> [a]n ERISA fiduciary may not knowingly present false information regarding a plan investment option to plan participants.  There is no exception to the obligation to speak truthfully when the disclosure concerns the employer's stock.

*In re WorldCom, Inc.*, 263 F. Supp.2d at 766.

It should be noted, as the various defendants' motions illustrate, that there is to some degree an inherent tension when corporate officers serve both in that role and as ERISA plan fiduciaries. *See*, *e.g.*, *Moench v. Robertson*, 62 F.3d 553, 572 (3d Cir. 1995), *cert. denied*, 516 U.S. 1115, 116 S. Ct. 917 (1996); *Martin v. Feilen*, 965 F.2d 660, 670-71 (8th Cir. 1992), *cert. denied sub nom*, *Henss v. Martin*, 506 U.S. 1054, 113 S. Ct. 979 (1993).  Defendants argue, for example, in defense of the misrepresentation portions of the plaintiffs' ERISA claims, that their providing plan participants with insider information known to them by virtue of their positions as officers of the Company could potentially have resulted in a violation of governing SEC rules prohibiting such disclosures. *See*, *e.g.*, Director Defendants' Memorandum (Dkt. No. 43) at 16-19; Committee Defendants' Memorandum (Dkt. No. 48) at 25-27.  This potential for conflict is sharply brought into focus when a company begins to fail, leading one court to observe, in the context of an employee stock ownership plan ("ESOP"), that "[c]ourts should be cognizant that as the financial state of the company deteriorates, ESOP fiduciaries who double as directors of the corporation often begin to serve two masters." *Moench*, 62 F.3d at 572.

Addressing this potential conflict, the court in *WorldCom* was able to

reconcile the two functions often dually carried out by corporate officers,

noting that ERISA does not require plan fiduciaries to convey non-public

material information to plan participants, but instead requires only "that

any information that is conveyed to participants be conveyed in

compliance with the standard of care that applies to ERISA fiduciaries."

263 F. Supp.2d at 767.  That court also observed, pertinently, that

> [t]hose who prepare and file SEC filings do not
> become ERISA fiduciaries through those acts, and
> consequently, do not violate ERISA if the filings
> contain misrepresentations.  Those who are ERISA
> fiduciaries, however, cannot in violation of their
> fiduciary obligations disseminate false information
> to plan participants, including false information
> contained in SEC filings.

*Id.* at 766.

Defining the intersection between obligations imposed under

securities law and those arising out of ERISA, as well as the scope of the

duty of a fiduciary to inform, are matters which are decidedly case specific,

and thus not well suited for disposition on motion to dismiss.  *See*, *e.g.*, *id.*

at 766-67.  Accordingly, at this early juncture I find that plaintiff's complaint

adequately states a failure on the part of the Administrative Committee

Defendants to fulfill their fiduciary duty to avoid misrepresentations, and to

42

communicate known, harmful information to plan participants.[20]

## 2.   Investment Committee Defendants

_____Under the Plan, members of the Investment Committee are entrusted with "[t]he responsibility for the management of the assets of the Plan[.]"  Plan § 15.02.  The authority delegated to those defendants includes the discretion to

> (a) provide direction to the Trustees including thereunder, but not by way of limitation, the direction of investment of all or part of the Plan Assets and the establishment of investment criteria, and (b) appoint and provide for use of investment advisors and investment managers.  In discharging its responsibility, the Investment Committee shall evaluate and monitor the investment performance of the Trustees and investment managers, if any.

*Id.* § 15.06.  Plaintiffs' complaint alleges breaches by the Investment Committee Defendants stemming from their failure to investigate the prudence of continuing the purchase of Agway Securities at values established by the Company, and to monitor and ensure that in making those investments the Company's matching requirements under the Plan were met.  Amended Complaint (Dkt. No. 29) ¶¶ 167-90.  Additionally, as with the claim against the Administration Committee Defendants, plaintiff's

---

[20]     This finding applies equally to plaintiffs' allegations of misrepresentation on the part of the Director Defendants and Investment Committee Defendants.

amended complaint alleges that the Investment Committee Defendants made affirmative misrepresentations to plan participants, and additionally failed to convey relevant information regarding the true financial condition of Agway and the risks associated with investments by the Plan, including the CSF, in Agway Securities. *Id.* ¶¶ 176-177.

In their motion, the Investment Committee Defendants seek dismissal of plaintiffs' claims regarding continued investment in Agway Securities, arguing that they lacked discretionary authority under the Plan to invest CSF monies in instruments other than company securities, and that case law supports the notion that the requirement of investment by a 401(k) plan or ESOP is a proper one. Viewing their obligations in strictly functional terms approaching ministerial in nature, the Committee Defendants argue that because the Plan requires that investments in the CSF be limited to Agway Securities and debt instruments, they lacked discretionary authority to eliminate those instruments as investment options unless and until the Plan was suitably amended. Since plan amendment, the argument goes, is not a fiduciary function, *Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S. Ct. 1783, 1789 (1996), defendants cannot be found to have breached their fiduciary duties of prudence and loyalty by failing to amend the Plan. *In re Ferro Corp.*

*ERISA Litig.*, *422* F. Supp.2d at 859 (citing, *inter alia*, *Lockheed Corp.*).

Plaintiffs counter that the Plan is not so limited as to mechanically require that all CSF funds be placed in Agway Securities without regard to the manner in which they are valued.  Plaintiffs further argue that in any event, as fiduciaries, the Investment Committee members were obligated to consider the prudence of the required investment as paramount, trumping any Plan directive to purchase such securities.

The Investment Committee Defendants' argument concerning this issue misses an important point.  It is true that the Plan appears to require investment of CSF funds in Agway Securities unless such instruments cannot be purchased, with the further directive that "[i]t is explicitly provided that up to 100% of Plan assets may be invested in qualifying employer securities."[21]  Plan § 7.01.  While the Plan thus does contain

_____

[21]     The Plan directs, in relevant part, that

> [t]he Company Security Fund, including earnings thereon, shall be invested by the Trustee in securities of the Company, other than common stock or membership debentures of the Company, which shall be qualifying employer securities as defined in Section 407(d) of [ERISA] provided, however, that if at any time when the Trustee has funds available for such investment and such prescribed securities cannot be purchased, the Trustee is authorized to hold such funds in an interest bearing account or to invest such funds in one or more securities of other

limitations on investments of CSF monies, it does not "require" the

purchase of any specific form of Agway Securities, nor does it establish

that such purchases must be made at values unilaterally established by

the Company, without questioning those benchmarks.  *See*, *e.g.*, Plan §

7.01.  In this regard, plaintiffs' claims in this case are exceedingly different

from those asserted by similarly situated plaintiffs involving the purchase

of publicly traded company securities which, by their very nature, are thus

subject to valuation based upon marketplace influences, as opposed to

being unilaterally established by the company.  This fact alone

distinguishes many cases heavily relied upon by the Investment

Committee Defendants, including *Tatum v. R.J. Reynolds Tobacco Co.*,

294 F.Supp.2d 776 (M.D.N.C. 2003)[22]; *Nelson v. IPALCO Enters.*, No. IP

---

> corporations which, in the Trustee's opinion,
> are comparable to the prescribed securities of
> the Company.  It is explicitly provided that up
> to 100% of Plan assets may be invested in
> qualifying employer securities.

Plan § 7.01.

[22]      Subsequent to the filing of defendants' motion in this case, *Tatum* was
reversed by the Fourth Circuit.  392 F.3d 636 (4th Cir. 2004).  In *Tatum*, the
defendants argued that their liquidation of company funds was a non-discretionary act,
mandated by amendments to the plan at issue, and therefore not subject to ERISA's
fiduciary duties.  *Id.* at 640.  The Fourth Circuit held that it was unnecessary to
determine whether the plan fiduciaries in that case were under a duty to ignore the
plan document if it was imprudent to sell company funds, instead finding that the
amendments at issue did not actually require liquidation.  *Id.*

02-477-C, 2003 U.S. Dist. LEXIS 4580 (S.D. Ind. Feb. 13, 2003); *Crowley ex re. Corning, Inc., Inv. Plan v. Corning, Inc.*, 234 F.Supp.2d 222 (W.D.N.Y. 2002), *motion to amend judgment denied*, No. 02-CV-6172, 2004 WL 763873 (W.D.N.Y. Jan. 14, 2004)*.

More fundamentally, the Investment Committee Defendants' argument misapprehends the nature of the fiduciary duty owed by them to the Plan and its participants.  Nothing in ERISA, including section 404(a)(1)(D), requires blind compliance with plan terms which would require a fiduciary to engage in imprudent conduct.  *In re Ferro Corp. ERISA Litig.*, 422 F. Supp.2d at 859.  Instead, under ERISA fiduciaries owe allegiance to the terms of a plan document only "insofar as such documents and instruments are consistent with the provisions of [Title I] and Title IV" of ERISA.  29 U.S.C. § 1104(a)(1)(D); *Kuper*, 66 F.3d at 1457.  Indeed, ERISA casts upon fiduciaries an affirmative, overriding obligation to reject plan terms where those terms would require such imprudent actions in contravention of the fiduciary duties imposed under ERISA.  *Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 322 (5th Cir.), *cert. denied*, 528 U.S. 967, 120 S. Ct. 406 (1999); *Kuper*, 66 F.3d at 1457 (citations omitted); *In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, 284 F.Supp.2d at 549

47

(citing *Central States, Southeast & Southwest Areas Pension Fund v.
Central Transport, Inc.*, 472 U.S. 559, 568, 105 S. Ct. 2833, 2839 (1985)
and *Laborers Nat'l Pension Fund*).  As such, plan fiduciaries implementing
language directing the purchase of employer securities must nonetheless
exercise the degree of loyalty and prudence owed by a fiduciary in
determining whether to carry out that directive.  *See Laborers Nat'l
Pension Fund*, 173 F.3d at 322 (investment manager must disregard plan
if investing plan assets as required by plan would violate its duty of
prudence); *see also Ershick v. Greb X-Ray Co.*, 705 F. Supp. 1482, 1486-
87 (D. Kan. 1989) (plan terms authorizing ESOP fiduciary to invest up to
100% of plan assets in employer stock could be followed only if the
investment decision was prudent), *aff'd sub nom*, *Ershick v. United
Missouri Bank of Kansas City, N.A.*, 948 F.2d 660 (10th Cir. 1991); *In re
Ferro Corp. ERISA Litig.*, 422 F. Supp.2d at 859 ("a fiduciary is not
required to blindly follow the terms of a plan if doing so would be
imprudent"); *In re Polaroid ERISA Litig.*, 362 F. Supp.2d at 473 ("ERISA
commands fiduciaries to obey Plan documents only to the extent they are
consistent with other fiduciary duties.").  For this reason the argument now
being made was rejected by the court in another similar action, the court
there concluding that

> [a]lthough the court agrees with defendants'
> position that an amendment of the Plan would not
> be a fiduciary act, it appears that plaintiffs' claim . .
> . does not solely complain of a lack of a plan
> *amendment*, as defendants suggest.  Rather,
> plaintiffs complain of the *lack of any action* taken
> by Plan fiduciaries, which might include other
> measures to protect participants' assets, such as a
> suspension of investment in CMS stock funds, or
> requiring investments in the ESOP to be held in
> cash until an assessment of the prudence of CMS
> stock investment could be made.  Therefore. . . the
> court will not dismiss Count I for failure to state a
> claim.

*In re CMS Energy ERISA Litig.*, 312 F. Supp.2d 898, 907-08 (E.D. Mich.

2004) (emphasis in original); *see also In re Sprint Corp. ERISA Litig.*, 388

F.Supp.2d 1207, 1218-25 (D. Kan. 2004).

In sum, I find that count two of plaintiffs' amended complaint more

than adequately states, for pleading purposes, breaches by members of

the Plan's Investment Committee of their fiduciary obligations.  Those

allegations include, by way of example, the claim that Committee

members failed to adequately investigate whether the Agway Securities

being held by the Plan's CSF were purchased at fair market value, and

that in fact they were acquired at highly inflated prices.  Amended

Complaint (Dkt. No. 29) ¶¶ 172-75.  That count also alleges the making by

the Investment Committee Defendants of affirmative misrepresentations to

plan participants as well as their failure to correct misinformation provided through other sources.  *Id.* ¶¶ 176-77.  These allegations suffice to state a claim for breach of fiduciary duty on the part of the Investment Committee Defendants.

### 3.   Director Defendants

_____The Director Defendants are implicated in counts three and five of plaintiff's complaint.  Count three alleges their breach of fiduciary duties under section 404(a), asserting a broad range of fiduciary obligations imposed under the Plan and by ERISA upon their conduct as fiduciaries.[23]  *See* Amended Complaint (Dkt. No. 29) ¶¶ 195-211.  In their motion, the Director Defendants challenge the legal sufficiency of that count.

The Director Defendants are named as fiduciaries of the Agway Plan, within the meaning of section 402(a).  Plan § 15.03.  While the Plan describes in detail the discretionary authority entrusted to other named fiduciaries, including the Investment Committee (Plan § 15.06) and the Administration Committee (Plan § 15.07), it does not contain a specific section defining the parameters of the fiduciary duties owed by the

---

[23]      Count three additionally alleges the Director Defendants' liability for co-fiduciary breaches under section 405(a).  *See* Amended Complaint (Dkt. No. 29) ¶ 209.  This portion of count three will be addressed elsewhere in this report.  *See* pp. 53-55, *post.*

Director Defendants.  The Plan does, however, provide that members of the Administration and Investment Committees are subject to appointment by the Board of Directors, to serve in essence at the Board's pleasure. *See* Plan §§ 15.01-15.02.

Count three of plaintiffs' amended complaint alleges appointment by the Director Defendants of members of the Administration and Investment Committees "who were neither qualified nor well suited to act in a fiduciary capacity for the sole benefit and protection of Participants", and their improper failure to remove such individuals from those committees. Amended Complaint (Dkt. No. 29) ¶ 196.  Count three goes on to further allege a failure on the part of the Director Defendants to adequately monitor and supervise the performance of those Committees.  *Id.* ¶ 197. These allegations are sufficient, at the pleading stage, to set forth a breach of fiduciary claim under section 404(a).  As one court has noted, the "[f]ailure to utilize due care in selecting and monitoring a fund's service providers constitutes a breach of a trustees' [sic] fiduciary duty." *Liss v. Smith*, 991 F. Supp. 278, 300 (S.D.N.Y. 1998) (citations omitted).

In their motion, the Director Defendants assert that under the plan their roles are limited to appointment and removal of members of the Administration and Investment Committee, and that they bear no

responsibility for monitoring the actions of their appointees.  This position

both runs counter to the purposes to be served by ERISA and the duty

imposed by that Act on plan fiduciaries and, while garnering some

modicum of support, is contrary to the vast majority of decisions having

addressed the issue.  Fiduciaries such as the Director Defendants

charged with the responsibility for appointing other plan fiduciaries to

serve at their pleasure cannot simply name those fiduciaries and then turn

a blind eye to the performance of their appointees; instead, under ERISA

the power to appoint carries with it the concomitant obligation to monitor

the performance of those appointees.[24]  *In re Ferro Corp. ERISA Litig.*,

422 F. Supp.2d at 863 ("[a]n appointing fiduciary . . . has an ongoing duty

to monitor its fiduciary appointees"); *Woods*, 396 F. Supp.2d at 1371-75;

*Kling v. Fidelity Management Trust Co.*, 323 F. Supp.2d 132, 142 (D.

Mass. 2004); *Liss*, 991 F. Supp. at 311; *see also Hull*, 2001 WL1836286,

at *7 (assuming, without deciding, that the power of a board of directors to

appoint plan fiduciaries gave rise to a corresponding duty to supervise, the

---

[24]      In support of their argument that no duty to monitor performance of their
appointees is imposed under ERISA, the Director Defendants place heavy
reliance upon *In re Williams Companies ERISA Litig.*, 271 F. Supp.2d 1328, 1339 (N.D. Okl.
2003).  To the extent *Williams* holds that the power to appoint, retain, and remove plan
fiduciaries does not give rise to a corresponding duty to monitor, that case stands
alone and has been almost universally condemned by the courts and the Secretary of
Labor.  *See Kling*, 332 F. Supp.2d at 142 n.9.

allegations in plaintiff's complaint were nonetheless inadequate to support

such a claim).

In sum, while the court disagrees with plaintiffs' assertions regarding

the breadth of the Director Defendants' fiduciary obligations under the

Plan, the allegations of their complaint, as amended, adequately plead

both a breach of their fiduciary duty to appoint competent fiduciaries to

serve as members of the Administration and Investment Committees and

the failure to monitor the performance of those appointees.

F.    ERISA Co-Fiduciary Breach Claims Under Section 405

Plaintiffs' co-fiduciary breach claims are governed by section 405(a)

of ERISA.  Under that section a fiduciary, irrespective of whether that party

itself has breached a fiduciary duty owed to the plan and its participants, is

deemed to be

> liable for a breach of fiduciary responsibility of
> another fiduciary with respect to the same plan in
> the following circumstances:
>
> > (1) if he participates knowingly in, or
> > knowingly undertakes to conceal, an
> > act or omission of such other fiduciary,
> > knowing such act or omission is a
> > breach;
> >
> > (2) if, by his failure to comply with
> > section 1104(a)(1) of this title in the
> > administration of his specific

responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a); *see In re Polaroid ERISA Litig.*, 362 F. Supp.2d at 479-80.  "[F]iduciaries may be liable under § 1105(a) even if their co-fiduciary's breach is beyond the scope of their own discretionary authority."  *Id.* at 480 (citing, *inter alia*, *In re WorldCom, Inc. ERISA Litig.*, 354 F. Supp.2d 423, 445 (S.D.N.Y. 2005)).  The duty imposed under section 405(a) is consistent with an inherent requirement, recognized under the common law of trusts, to the effect that a fiduciary has a duty to "use reasonable care to prevent a co-trustee from committing a breach of trust, and if necessary to compel a co-trustee to redress a breach of trust."  Restatement (Third) of Trusts § 184 (1992).

To survive a dismissal motion, a plaintiff asserting such a claim must 1) identify the specific breach of fiduciary duty involved, 2) aver the fiduciary's knowledge of the co-fiduciary's breach, 3) state how the defendant failed to take reasonable efforts to remedy the breach, and 4) identify the acts the defendant took to conceal any information regarding

the breach.  *In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL

31431588, at *17; *see also Woods*, 396 F. Supp.2d at 1378-79 (collecting

cases).  In addition, to state a cognizable section 405(a) claim, a plaintiff

must identify the harm allegedly caused by or resulting from each specific

breach.  *In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588, at

*17.

The court agrees with defendants' assertion that these matters are

not pleaded with any degree of specificity in plaintiffs' admittedly extensive

amended complaint.  Having reviewed the allegations associated with

plaintiffs' section 405(a) claims against the various fiduciary defendants,

however, considered in the context of the liberal, notice pleading

requirements of Rule 8(a), I find that they adequately apprise the

defendants of the nature of the co-fiduciary breaches alleged, their

knowledge of those breaches, the failure to take reasonable efforts to

avoid them, and resulting harm.  Accordingly, I recommend against

dismissal of plaintiffs' co-fiduciary breach claims against the various

ERISA defendants.

### G.    Prohibited Transaction Claim Under Section 406

In count five of their complaint plaintiffs rather summarily allege that

each of the ERISA defendants bears liability for having engaged in a

prohibited transaction in violation of section 406(a).  Amended Complaint

(Dkt. No. 29) ¶¶ 239-43.  Specifically, plaintiffs contend that the Plan's

purchase of Agway Securities at prices in excess of fair consideration

stripped those transactions of eligibility for exemption under section 408(e)

of ERISA, which permits the acquisition by a 401(k) plan or ESOP of

employer securities under certain specified conditions.[25]  In their motion,

defendants counter that the Plan's purchase of Agway Securities and debt

instruments was at the same value as that to which the corresponding

securities and instruments were offered to the public and by virtue of this

and the voluntary redemption program, as a matter of law, those

instruments and securities were therefore purchased for adequate

---

[25]    Section 408, which exempts from the category of prohibited transactions
under Section 406, provides in pertinent part that the exemption applies

to the acquisition or sale by a Plan of qualifying employer securities. . .-

(1) if such acquisition . . . is for adequate consideration (or
in the case of a marketable obligation, at a price not less
favorable to the plan than the price determined under
[section 407 of ERISA],

(2) if no commission is charged with respect thereto, and

(3) if –

(A) the plan is an eligible individual account
plan [as defined under section 407(d)(3) of
ERISA.]

29 U.S.C. § 1108(e).

consideration, thus qualifying the transactions for exemption under section 408.

Section 406 of ERISA generally proscribes transactions between plans and parties in interest.  When enacting section 406(a)(1), which was designed as a specific supplement to the more general duty of loyalty owed by a fiduciary to plan beneficiaries, *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006), Congress intended to "[r]espond [ ] to deficiencies in prior law regulating transactions by plan fiduciaries[.]" *Harris Trust and Savings Bank v. Solomon & Smith Barney, Inc.*, 530 U.S. 238, 241-42, 120 S. Ct. 2180, 2184-85 (2000).  Under section 406, transactions involving the "sale or exchange . . . of any property between the plan and a party in interest", including the "acquisition, on behalf of the plan, of any employer security" is prohibited.  29 U.S.C. § 1106(a)(1)(A), (E).  *See Henry v. Champlain Enters., Inc.*, 334 F.Supp.2d 252, 268-69 (N.D.N.Y. 2004) (Hurd, J.), *vac'd on other grounds*, 445 F.3d 610 (2d Cir. 2006).  Deeming such transactions to be prone to abuse, section 406 makes such prohibited transactions "'illegal per se.'"  *Id.* (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1464-65 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251, 104 S. Ct. 3533 (1984)).  Accordingly, a party in pursuit of a claim under section 406 need not establish that the prohibited transactions

caused harm.  *Id.* (citing, *inter alia*, *Chao*, 285 F.3d at 439).  Claims

asserted under section 406, though distinct from the ordinary breach of

fiduciary duty claim arising under section 404, must nonetheless be

analyzed against the overarching duties imposed under that section,

which has been described as mandating that

> [a] fiduciary must discharge his duties solely in the
> interest of the participants and beneficiaries.  He
> must do this for the exclusive purpose of providing
> benefits to them.  And he must comply with the
> care, skill, prudence, and diligence under the
> circumstances then prevailing of the traditional
> prudent man.

*Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88 (2d Cir. 2001)

(quoting *Bierwirth,* 680 F.2d at 271 (internal quotations and citation

omitted)), *cert. denied sub nom*, *Empire Blue Cross & Blue Shield v.*

*Byrnes*, 537 U.S. 1170, 123 S. Ct. 1015 (2003).

The strictness of section 406's prohibitions are tempered by section

408(e) of ERISA, which permits acquisition of employer securities by

pension plans under certain circumstances.  29 U.S.C. § 1108.  In order

"to encourage employees' ownership of their employer company," section

408(e) permits the sale of employer stock by a party in interest to a

qualified thrift savings plan provided that the sale is in return for

"'adequate' consideration."[26]  *Kuper,* 66 F.3d at 1458 (quoting 29 U.S.C. §

1108(e)); *see also Henry*, 445 F.3d at 618.  By exempting such 401(k)

individual account plans from the Act's diversification requirements,

Congress manifested a belief that by permitting unlimited investment in

the employer's securities, such plans could serve as "device[s] for

expanding the national capital base among employees – an effective

merger of the roles of capitalist and worker."  *Cunningham*, 716 F.2d at

1458.  As one court has noted, "[p]rograms . . . which encourage

employee ownership of their employer's stock are recognized as furthering

an independent and compelling congressional objective."  *Edgar v. Avaya,*

*Inc.*, No. A. 05-3598, 2006 WL 1084087, at *5 (D.N.J. Apr. 25, 2006)

(citing, *inter alia*, *Moench*, 62 F.3d at 568).

   Acknowledging the benefits flowing from investment by ESOP and

401(k) funds in employer securities, various courts have recognized a

presumption that a fiduciary's decision to continue to offer such

investments is reasonable and prudent.  *See*, *e.g.*, *Kuper*, 66 F.3d at 1459

(citing *Moench*); *Moench*, 62 F.3d at 571-72; *see also In re Polaroid*

---

[26]      In the case of securities with no known market value, ERISA defines "adequate consideration" as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary [of Labor]."  29 U.S.C. § 1002(18)(B).

*ERISA Litig.*, 362 F. Supp.2d at 474.  This presumption, which applies with
equal force to 401(k) plans requiring that an employer's stock be an
investment option, *see In re Polaroid ERISA Litig.*, 362 F. Supp.2d at 474;
*In re WorldCom, Inc.*, 263 F. Supp.2d at 764-65, can be overcome by a
showing "that circumstances arose which were not known or anticipated
by the settlor of the trust that made a continued investment in the
company's stock imprudent, and in effect, impaired the purpose for which
the trust was established."  *In re WorldCom*, *Inc.*, 263 F. Supp.2d at 764
(citing *Moench*, 62 F.3d at 571).  The burden of overcoming the
presumption rests with the plaintiff.  *Polaroid*, 362 F. Supp.2d at 474.

The teaching of the First Circuit's decision in *LaLonde*, while decided
in the context of an ESOP, is equally applicable in this instance to the CSF
component of the 401(k) plan in issue; in light of the complexity of the
issues involved and the uncertainty surrounding the intersection between
the requirements of a plan to invest in a company's stock and securities
and the duty owed under ERISA by plan fiduciaries, disposition of such
claims on motion to dismiss pursuant to Rule 12(b)(6), without the benefit
of a more fully developed record, is generally not appropriate or desirable.
*LaLonde v. Textron, Inc.*, 369 F.3d 1, 6-7 (1st Cir. 2004); *see In re Ferro
Corp. ERISA Litig.*, 422 F. Supp.2d at 860 ("The Court has serious doubts

as to whether it is appropriate to evaluate the *Moench* presumption [on motion under Rule 12(b)(6)]"); *In re Polaroid ERISA Litig.*, 362 F. Supp.2d at 475 ("Whether a plaintiff has overcome the presumption of prudence [under *Moench*] is an evidentiary determination that is ill-suited for resolution on a motion to dismiss.").

Section 406(a) consists of two distinct parts.  Subsection (1) prohibits "[a] fiduciary with respect to a plan" from <u>causing</u> the plan to engage in a prohibited transaction.  The second subsection, as applied in the context of this case, prohibits a fiduciary "who has authority or discretion to control or manage the assets of a plan" from permitting the plan to hold securities knowing that their retention would violate section 407(a).  Unlike its section 404 counterpart, section 406 of ERISA does not give rise to co-fiduciary liability, instead requiring a specific showing as to each fiduciary.  29 U.S.C. § 1106.

Plaintiffs' complaint, as amended, broadly alleges defendants' participation in the acquisition of Agway instruments not qualifying for exception under section 408.  *See*, *e.g.*, Amended Complaint (Dkt. No. 29) ¶¶ 240-42.  On a motion to dismiss, I am thus unable to state with certainty that plaintiffs would be unable to prove a set of circumstances establishing their knowledge of one or more section 406 prohibited

transactions.[27]

The somewhat more difficult issue relates to the causation element. Liability of a fiduciary under section 406(a)(1) is limited to circumstances where the fiduciary causes a plan to engage in a prohibited transaction. *Lockheed Corp.*, 517 U.S. at 888-89, 116 S. Ct. at 1788-89; *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 284 F.Supp.2d at 571.  As the Committee Defendants have noted, plaintiffs' section 406 claim does not precisely allege that any of the defendants caused the prohibited transactions.  It does, however, allege that the defendants "engaged", "authorized" and "participated" in such purchases.[28]  *See*, *e.g.*, Amended Complaint (Dkt. No. 29) ¶ 240.  Under these circumstances I believe the complaint adequately alleges violation of section 406(a)(1) on the part of the ERISA defendants.

Turning to subdivision two, liability under that section is limited to fiduciaries with "authority or discretion to control or manage the assets of

---

[27]    Whether the disputed securities were purchased for adequate consideration is an issue upon which the defendants will bear the burden of proof. *Henry*, 445 F.3d at 619.  In their amended complaint, plaintiffs allege that the various ERISA defendants knew full well that the Agway Securities being purchased by the Plan for the CSF were grossly overvalued.  *See*, *e.g.*, Amended Complaint (Dkt. No. 29) ¶¶ 91-99, 113-16.

[28]    The amended complaint also alleges that the individual defendants "acquiesced in and to" the prohibited purchases.  *See*, *e.g.*, Amended Complaint (Dkt. No. 29) ¶ 240.  Mere acquiescence of a fiduciary in a prohibited transaction, however, does not seem to satisfy the "cause" requirement of section 406(a)(1).

a plan".  29 U.S.C. § 1106(a)(2).  Since under the Plan only the

Investment Committee defendants are given that authority, and the

Administration Committee defendants are specifically excluded from

carrying out that function, only the Investment Committee defendants bear

potential liability under subsection two.  *See* Plan §§ 15.01, 15.06.

    H.    <u>Claims Against PWC</u>

    Plaintiffs' complaint alleges that during the relevant time period PWC

was engaged to audit annual reports of the Plan, including those required

under ERISA to be filed annually with the Department of Labor.[29]  *See* 29

U.S.C. § 1023(a)(1)(A); Amended Complaint (Dkt. No. 29) ¶¶ 122-23.

Plaintiffs further assert that PWC provided unqualified opinions that the

financial statements fairly identified and quantified the Plan assets in

accordance with GAAP, and that its audits were performed utilizing

generally accepted auditing standards ("GAAS"), when in fact the Plan's

financial statements were not compliant with GAAP, and were based upon

the overstated values assigned to Agway Securities held by the Plan.  *Id.*

---

[29]    The annual reporting requirements applicable to an ERISA plan are set forth in 29 U.S.C. § 1023, as plaintiffs correctly note in their complaint.  *See, e.g.*, Amended Complaint (Dkt. No. 29) ¶ 118.  That section does not impose a duty of care and, correspondingly, does not alone give rise to a cause of action akin to professional malpractice as against plan auditors.  *Pension Plan of Public Service Company of New Hampshire v. KPMG Peat Marwick*, 815 F. Supp. 52, 55-56 (D.N.H. 1993).

¶ 123.  Bottomed upon these allegations, plaintiffs' sixth cause of action alleges liability as against PWC under section 502(a)(3) of ERISA for participating in prohibited transactions, and breaches by others of their fiduciary duties.  *Id.* ¶¶ 244-55.  Plaintiffs' complaint also asserts pendent state law claims against PWC for professional malpractice and breach of contract (count seven), negligence (count eight), and negligent misrepresentation (count nine).  As relief against PWC, *inter alia*, plaintiffs seek disgorgement of all fees paid by the Plan and by Agway to PWC during the relevant periods, together with restoration to the Plan of losses proximately caused by its breaches.[30]

Defendant PWC has moved seeking dismissal of each of plaintiffs' claims against it, arguing that they are deficient as a matter of law and that the relief sought is neither legally available nor appropriate.

### 1.   ERISA Claim

As a threshold matter, a determination must be made as to whether, under the circumstances presented, PWC was a fiduciary with respect to the Plan, and thus subject to the duties imposed under ERISA upon such parties.  As was previously noted, ERISA recognizes a party as a plan

---

[30]     Plaintiffs' complaint alleges that in addition to performing accounting work for the Plan, PWC also rendered professional services of a similar nature to Agway.  Amended Complaint (Dkt. No. 29) ¶ 130.

fiduciary

>        to the extent (i) he exercises any discretionary
>        authority or discretionary control respecting
>        management of such plan or exercises any
>        authority or control respecting management of
>        disposition of its assets, (ii) he renders investment
>        advice for a fee or other compensation, direct or
>        indirect, with respect to any moneys or other
>        property of such plan, or has any authority or
>        responsibility to do so, or (iii) he has any
>        discretionary authority or discretionary
>        responsibility in the administration of such plan[.]

29 U.S.C. § 1002(21)(A).  By regulation which essentially tracks the

statutory definition, the DOL has noted that

>        an attorney, accountant, actuary or consultant who
>        renders legal, accounting, actuarial or consulting
>        services to an employee benefit plan (other than an
>        investment adviser to the plan) [will not be] a
>        fiduciary to the plan solely by virtue of the
>        rendering of such services, [unless] . . . such
>        consultant . . . exercises authority or control
>        respecting management or disposition of the plan's
>        assets[.]

See ERISA Interpretive Bulletin 75-5, 29 C.F.R. § 2509.75-5, D-1.  Under

ERISA and the corresponding DOL regulations, an accountant who does

no more than perform the ordinary function of an accountant or fund

auditor is not an ERISA fiduciary.  See id.; Pension Plan of Pub. Serv. Co.

of New Hampshire, 815 F. Supp. at 54-55; see also Gerosa v. Savasta &

Co., Inc., 329 F.3d 317, 320 n.3 (2d Cir. 2003) ("We have previously

65

agreed with the Department of Labor that actuaries, attorneys, and accountants are not ordinarily fiduciaries unless they render investment advice or are given special authority over plan management.") (citations omitted).  Examining generally the question now presented, the Third Circuit has noted:

> [i]t seems clear to us from [a passage of the legislative history of ERISA] that Congress intended accountants, attorneys, and other outside consultants to be treated as plan fiduciaries only if they go beyond their normal roles and assume management or administrative responsibilities.

*Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1150 (3d Cir. 1989).  As that court further noted in *Painters of Philadelphia*, the function of an independent auditor is "fundamentally at odds with any notion that such an accountant would be a plan fiduciary." *Id.*

While a professional such as an attorney or accountant rendering professional services to a plan is ordinarily not regarded as a fiduciary as a result of having rendered those services, such a professional may be found to have crossed the fiduciary threshold if discretionary authority or control over the plan, its assets, and/or administration is either conferred upon or undertaken by that party.  *In re Enron Corp. Securities, Derivative*

& *"ERISA" Litig.*, 284 F.Supp.2d at 572-73.  To transcend beyond the role

of mere service provider and realize fiduciary status, however, a party

must be found to possess and/or have exercised "actual decision-making

power rather than [merely exerting] the influence that a professional may

have over the decisions made by the Plan trustees [he or she] advises."

*PapPas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991)

(citing *Painters of Philadelphia*, 879 F.2d at 1150.  "Thus, a professional

service provider's '[m]ere influence over the trustee's . . . decisions . . . is

not [the type of] effective control over plan assets' that creates fiduciary

liability." *Mellon Bank, N.A. v. Levy*, Civ. Action. No. 01-1493, 2002 WL

664022, at *5 (W.D. Pa. Apr. 22, 2002) (quoting *Schloegel v. Boswell*, 994

F. 2d 266, 271-72 (5th Cir.)*, cert. denied*, 510 U.S. 964, 114 S.Ct. 440

(1993)).

A good illustration of the distinction between rendering services

purely as a non-fiduciary, and engaging in conduct potentially giving rise

to liability, is presented by the facts underlying the Court's decision in

*Harris Trust & Savings Bank v. Solomon Smith Barney, Inc.*, 530 U.S.

238, 120 S. Ct. 2180 (2000).  There defendant Solomon*,* which had been

engaged to provide broker-dealer services executing non-discretionary

equity trades at the direction of the plan fiduciaries, sold interest in several

properties later deemed to be "nearly worthless" to the Plan.  530 U.S. at

242-43, 120 S. Ct. at 2185.  Observing that section 502(a)(3) does not

limit "the universe of possible defendants", the Court concluded that a

non-fiduciary such as Solomon could be sued by a plan participant,

beneficiary or fiduciary under that section.  530 U.S. at 246-47, 120 S. Ct.

at 2187-88.  Drawing upon the common law of trusts, the Court held that

liability would lie as against a non-fiduciary under circumstances where a

transferee of property was "demonstrated to have had actual or

constructive knowledge of the circumstances that rendered the transaction

unlawful."  530 U.S. at 251, 120 S. Ct. at 2190.

The allegations of plaintiffs' amended complaint against PWC

implicate the type of services ordinarily rendered by independent, outside

auditors.  Nowhere does plaintiff's amended complaint assert that PWC

possessed the power to make decisions regarding Plan assets, nor do

plaintiffs aver that through their conduct as auditors, PWC intended to

entice fiduciaries of the Plan to breach their duties, or to engage in

prohibited transactions.

The finding that PWC did not, based upon the allegations of

plaintiffs' complaint, cross the line of demarcation and become a fiduciary

does not end the inquiry, however, since under section 502(a)(3) a non-

fiduciary may, under certain limited circumstances, bear liability to a plan

for participating in a breach of fiduciary duty or a prohibited transaction as

a party in interest.[31]   A non-fiduciary who knowingly participates in an

ERISA fiduciary's breach of duty can be held liable; that liability, however,

is not for monetary damages, but is instead limited to equitable relief,

including restitution.  *Gerosa*, 329 F.3d at 321.  A claim for restitution,

however, requires a showing that a defendant has unjustly received a

benefit or payment or holds funds or property which, good conscience

dictates, should rightfully belong to the plaintiff.  *Id.*  In this case, as in

*Gerosa*, these requirements are not met; PWC neither profited from

fiduciary breaches of others, as distinct from its role as an auditor, nor has

it been unjustly enriched.  Plaintiffs thus have no ERISA claim against

PWC.

I note, moreover, that the liability of a non-fiduciary for breach of

section 502(a)(3), is dependent upon a showing of actual participation in

the prohibited transaction at issue.  *See Mellon Bank*, 2002 WL 664022, at

---

[31]      ERISA defines the term "party in interest" to include "a person providing services to such plan[.]"  29 U.S.C. § 1002(14)(B).  An outside auditor or accounting firm which provides the type of services rendered by PWC to the Plan falls within this definition of party in interest.  *Clayton v. KPMG Peat Marwick*, No. CV 94-2005, 1994 WL 774526, at *3 (C.D. Cal. July 7, 1994); *see also Liss,* 991 F. Supp. 278, 293 (attorney acting as legal counsel to a plan is a party in interest under ERISA).

*9-*11 (discussing *Reich v. Compton*, 57 F.3d 270 (3d Cir. 1995) and

*Nieto v. Ecker*, 845 F.2d 868 (9th Cir. 1988)).  Plaintiffs' complaint in this

action fails to allege that PWC was directly involved in or a party to the

transactions at issue.  This omission is fatal to their ERISA claim against

PWC as a non-fiduciary.  *Id.*

For these reasons, I recommend that the sixth count of plaintiffs'

amended complaint, asserting a violation under ERISA against PWC, be

dismissed.

> 2.   Pendent State Law Claims

In the event that my recommendation regarding dismissal of

plaintiffs' ERISA claims against defendant PWC is accepted, the court

must next determine whether to exercise supplemental jurisdiction over

plaintiffs' remaining state law claims, pursuant to 28 U.S.C. § 1367.[32]

Under section 1367, which in part represents codification of the doctrine of

supplemental jurisdiction, *Valencia ex rel. Franco v. Lee*, 316 F.3d 299,

---

[32]   That section provides, in pertinent part, for the exercise of federal jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The section goes on to provide, however, that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3); *see Kolari v. New York-Presbyterian Hosp.*, Docket No. 05-1981-cv (2d Cir. July 11, 2006), slip op. at 9.

305 (2d Cir. 2003); *Sullivan v. Metro-North R. Co.*, 179 F.Supp.2d 2, 5-6

(D. Conn. 2002), federal courts have the discretion to retain jurisdiction

over state court claims despite dismissal of the federal predicate to

subject matter jurisdiction. *Nowak v. Ironworkers Local 6 Pension Fund*,

81 F.3d 1182, 1191-92 (2d Cir. 1996); *Valencia*, 316 F.3d at 304-08

(collecting cases); *see also Mellon Bank*, 2002 WL 664022, at *11.

Factors which inform the decision of whether to retain jurisdiction in such

circumstances include judicial economy, convenience, fairness, and

comity. S*ee Kolari*, slip op. at 9 (citing *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988); *Valencia*, 316 F.3d at 305.

While in its motion PWC does not raise a question regarding the

court's subject matter jurisdiction over its pendent state law claims, the

court is not only empowered, but indeed obligated, to do so of its own

initiative. *Andrus*, 436 U.S. at 608 n.6, 985 S. Ct. at 2005 n.6.  In this

case, I find no extraordinary circumstances warranting the exercise of

supplemental jurisdiction over the plaintiffs' state law claims against PWC.

While federal interests are at stake in the action to the extent of plaintiffs'

claims against the various ERISA defendants, their non-ERISA claims

against PWC present matters of state law and concern.  As one court, in

similarly declining to exercise supplemental jurisdiction over state law

71

claims after dismissal of corresponding federal counts, observed,

> [t]he resources of the federal court should not be
> directed at resolving a case where only state law
> claims remain if the plaintiff is not time barred from
> raising those claims in the state court.  It is in the
> interest of comity to allow state courts to apply
> state law when it is not necessary for the federal
> court to do so.  The convenience of the parties will
> not be adversely affected by having the case
> brought in the state court.  Considerations of
> judicial economy and comity weigh against this
> court exercising supplemental jurisdiction over the
> remaining claims arising under state law.

*Pension Plan of Public Serv. Co. of New Hampshire*, 815 F. Supp. at 58.

Accordingly, I recommend dismissal of counts seven, eight and nine of

plaintiffs' complaint for lack of federal subject matter jurisdiction.[33] *Mellon*

*Bank,* 2002 WL 664022, at *11.

IV.    SUMMARY AND RECOMMENDATION

---

[33]    In the event that the court does not accept my recommendation in this regard and opts instead to exercise supplemental jurisdiction over plaintiffs' pendent state law claims against PWC, I recommend against dismissal of those claims altogether on the various grounds urged by PWC, being unable to conclude at this early juncture that plaintiffs could not establish any set of facts which would entitle them to recovery against that party.  I would, however, suggest that the court consider requiring that the three claims asserted in counts seven, eight and nine of plaintiffs' amended complaint be consolidated as all overlapping and being duplicative of plaintiffs' professional malpractice claim.  Additionally, I would recommend against limiting plaintiffs' recovery at this juncture based upon the applicable, three year statute of limitations, *see* N.Y. Civil Practice Law & Rules, § 214(6), since in light of the potential applicability of the continuous relationship doctrine as providing an exception for application of the three year statute of limitations, *see*, *e.g.*, *Ackerman v. Price Waterhouse*, 252 A.D.2d 179, 205-06, 683 N.Y.S.2d 179, 196-97 (1st Dept. 1998), such an issue is better resolved on motion for summary judgment, or at trial.

72

Applying the significantly deferential standard of Rules 8(a) and 12(b)(6) to plaintiffs' amended complaint, I find that it adequately pleads violations of sections 404, 405 and 406 of ERISA as against the Director Defendants, the Administrative Committee Defendants, and the Investment Committee Defendants, though with certain limitations as set forth above.  I further find, however, that plaintiffs have failed to state an ERISA claim against PWC, and recommend against the exercise of supplemental jurisdiction over plaintiffs' pendent state law claims against that defendant.  I also find that the Plan is not properly named as a plaintiff, and its claims against the defendants are subject to dismissal on that basis.  Accordingly, it is hereby

RECOMMENDED that defendants' motions to dismiss (Dkt. Nos. 43, 47, 48 and 50) be GRANTED, in part, and that the Agway Plan be dismissed as a party plaintiff, and that all claims be dismissed as against defendant PWC, without prejudice as to state law claims, but that those motions be DENIED in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties electronically.

Dated:     July 13, 2006
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\Civil\2003\03-CV-1060\rep-rec.wpd

74